305 So.2d 444 (1974)
Don S. COLEMAN et al., Plaintiffs-Appellees-Respondents,
v.
BOSSIER CITY, Defendant-Appellant-Relator.
BELLAIRE HOMES, INC., Plaintiff-Appellee-Respondent,
v.
BOSSIER CITY, Defendant-Appellant-Relator.
No. 54512.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 17, 1975.
James Fleet Howell, Feist, Schober & Howell, Shreveport, for defendant-appellant-relator.
Henri Loridans, Bossier City, Henry A. Politz, Booth, Lockard, Jack, Pleasant & Lesage, Shreveport, for plaintiffs-appellees-respondents.
TATE, Justice.
In these consolidated cases, the plaintiffs sue to recover from the defendant City expenses incurred in constructing water and sewerage facilities which later became part of the City water and sewerage system. The court of appeal affirmed the recovery of such expenses. 291 So.2d 410 (La.2d Cir. 1974), certiorari granted 292 So.2d 242 (La. 1974).[1]
*445 The plaintiffs had incurred these expenses in reliance upon certain "refund" contracts openly executed with officials of the City. The contracts were, however, invalid because of non-compliance with state statutes requiring, for instance, public bidding.
The issue is whether, nevertheless, the defendants may recover for actual expenses incurred in reliance upon these invalid contracts.
The undisputed facts show good faith on the part of all parties. As part of a general policy, the City entered into agreements with owners of subdivisions as yet undeveloped.
By one of these written contracts, a subdivider agreed to furnish the City the funds to construct water and sewerage facilities for a given subdivision, in accordance with plans and specifications established by the City and under the supervivision of the City's engineer. In return, the City agreed to refund to the subdevelopers fifty per cent of the developer's actual cost. The refund was payable annually in amounts equal to money received from a seven mill ad valorem tax assessed against the property in the subdivision.
The obvious advantage to the municipality was to assure immediate development of residential subdivisions, and addition of the residences built therein to municipal taxrolls, without any capital expenditure by the City. The equally obvious advantage to the developers was to assure immediate water and sewerage facilities to their subdivisions, thus assuring readier sale of the lots therein.
The evidence also establishes that the cost figures utilized represented the actual cost of construction of the facilities and that the City is receiving full value.
However, as the defendant points out, there was no formal resolution adopting the contract. Even if there had been, by the contracts the City in effect borrowed money from the developers and pledged uncollected taxes for the payment thereof without the requisite prior approval of the State Bond and Tax Board, La.R.S. 47:1803, 47:1804; and, further, public bids were not secured after the requisite advertisement before the work was done, La.R. S. 38:2211. Thus, the refund contracts themselves were null and void and unenforceable. See La.R.S. 47:1806 and also Fox v. City of New Orleans, 12 La.Ann. 154, 68 Am.Dec. 766 (1857).
The court of appeal, conceding that the contracts themselves were illegal and unenforceable, nevertheless allowed the developers to recover costs expended in reliance upon them. Such a recovery was similarly allowed under similar circumstances, in rejecting similar contentions, in Pugh v. Town of Logansport, 235 So.2d 226 (La.App.2d Cir. 1970). See, to similar effect, also Marquette v. Housing Authority of Opelousas, 137 So.2d 374 (La.App. 3d Cir. 1962).
These decisions of the intermediate courts all relied upon our decisions in Smith v. Town of Vinton, 216 La. 9, 43 So. 2d 18 (1949) and Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943).
In these decisions, contracts for work performed or for supplies and materials were held to be null and void because of noncompliance with the public contracts law, which (as noted) requires advertisement and competitive bidding. Nevertheless, the supplier or contractor was allowed recovery against the public body, not on the contract itself (which was held to be null and void), but rather on an unjust enrichment theory, Civil Code Article 1965, for the actual cost of the materials, services, labor, etc., but without allowance for overhead and profits.
This doctrine was held to apply where, although the contracts themselves were illegal (since executed in violation of a prohibitory law), no actual fraud was involved and the parties had acted in good faith. Since the public body had received the *446 actual value of the materials or services furnished by the supplier in reliance upon the (illegal) contract, fairness required that the latter be returned the actual cost of such material and labor so furnished; for the public body should not be able to deny any payment at all to him because of the invalidity of the contract, yet retain the value of materials or services obtained from him because of it.
The defendant City, however, strongly contends that there is no unjust enrichment in the present case because, in truth, there was no "impoverishment" of the contractors (in the sense of any actual loss) and because, it is argued, the allowance of recovery here will amount to an allowance to them of profit rather than merely reimburse them for costs incurred.
See, for essentials of unjust enrichment action in Louisiana: Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974); Brignac v. Boisdore, 288 So.2d 31 (La.1973); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1968). See also Nicholas, Unjustified Enrichment in Civil Law, 36 Tul.L.Rev. 605 (Part I), 37 TulL.Rev. 49 (Part II) (1962); Comment, 43 Tul.L.Rev. 263 (1969).
As the trial court noted, in rejecting this contention:
"* * * [T]he record establishes that both parties acted in the utmost good faith. There is no evidence of fraud on the part of any party. The transactions were not malum in se but merely malum prohibitum. The fact that the plaintiffs in these cases made a profit in their sales of lots is of no consequence. According to the evidence, this profit was less than that expected because the prices established for the lots was based in part upon the assumption that the defendant would bear one-half the total cost of these facilities. Actually then while plaintiffs made a profit on the sale of lots, no profit was made on these transactions with the defendant. There is no doubt that the defendant has benefitted by having these facilities incorporated into its water and sewerage system. It would appear unjust here, as it did in the above cited case [Pugh v. Town of Logansport], for the city to have the use and benefit of these facilities and escape all liability for the cost of their construction.
"Consequently, while the contracts are void because of failure to comply with the law, the plaintiffs nevertheless are entitled to recover on a quantum meruit basis one-half of their actual cost, which is the amount prayed for."
We find no error in this conclusion.
As noted in the article by Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, 36 Tul.L.Rev. 605 (Part I), 643 (1962), so heavily relied upon by us in Minyard: "The impoverishment will usually consist of a diminution of the plaintiff's assets or the incurring of a debt, but it may equally consist in the failure to acquire an asset or in the foregoing of a chance of remunerative activity. * * *" Again, as summarized by another source: "The requirement of impoverishment, like that of enrichment, is broadly defined in French law to include any diminution of the plaintiff's assets or the prevention of an opportunity for such increase." Comment, 43 Tul.L.Rev. 263, 285 (1969). Cf., Litvinoff on Obligations, Section 71 (Volume 6, Louisiana Civil Law Treatise (1969).)
We did not allow the suppliers to recover their profits in Smith v. Town of Vinton and Boxwell v. Department of Highways because, then, the suppliers would recover sums they had not actually expended in reliance upon the invalid contracts. Here, however, the sums sought were actually expended (twice over, actually) in reliance *447 upon the (invalid) contracts. Thus, to allow recovery here is in accord with the reasoning in Smith and Boxwell, where reimbursement was allowed for the actual costs and expenses of the materials and services supplied pursuant to the invalid contract, since they could not be returned in kind.
Moreover, the action to recover costs expended in reliance upon an invalid contract might, in civil-law theory, be based upon the doctrine of culpa in contrahendo rather than upon that of unjustified enrichment (the action de in rem verso). Under the former doctrine, the essential basis for such a responsibility is a fault in contracting which gives rise to a quasi-contractual obligation to pay the loss so incurred. The essential purpose is to afford a recovery to a person who has changed his position in reliance upon a nonenforceable contract, at least to the extent of the expenses so incurred by him which are not in excess of the value of the benefits received by the other party.
See: Civil Code Articles 2293, 2294; Piotet, Culpa in Contrahendo (Switz.1963); Schwenk, Culpa In Contrahendo in German, French and Louisiana Law, 15 Tul.L. Rev. 87 (1940). See also 4 Pound, Jurisprudence 429 (1959) and 5 Pound, Jurisprudence 429-430 (1959); Williston on Contracts, Section 63A (rev. ed., 1936); Fuller & Perdue, The Reliance Interest in Contract Damages, 46 Yale L.J. 373 (Part II) at 413-14 (1936). Cf. arts. 307-309 German Civil Code (Wang's translation, 1907).
In the present case, for instance, where the parties were in good faith in their attempted contract, and there is no fraud, the party who received the benefits of an invalid contract might be responsible, at least to the extent of the benefits received, for the expenses incurred by the other in the performance of the (invalid) contract. The party who received a payment[2] not technically due[3] because of the invalidity of the contract[4] may be obliged to restore it,[5] or at least the expenses incurred by the other.[6]
However, in view of the prior jurisprudence which, under the circumstances, permits recovery as an unjustified enrichment, we need not now decide whether recovery may be allowable under the doctrine of culpa in contrahendo or whether, if so, application of the doctrine might be justified by the slight fault of the defendant City in entering into such a contract, which it (more than the developers) should have known was illegal.
For the reasons assigned, we affirm the judgment of the court of appeal.
Affirmed.
*448 SUMMERS, J., dissents for the reasons assigned.
BARHAM, J., dissents with reasons.
DIXON, J., is recused.
SUMMERS, Justice (dissenting).
This action is not subsidiary. It does, to the contrary, defeat a rule of law aimed specifically at preventing the incurring of obligations by a municipality without public bidding. The action should not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not "perpetrate a fraud on the law." Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116 (La.1974); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
I respectfully dissent.
BARHAM, Justice (dissenting).
The majority opinion, which espouses much good legal theory, neglected to base that legal theory upon the salient facts of this case.
The majority would have the reader believe that there has been an impoverishment of the plaintiffs by failure to receive the top dollar value for the lots which they have sold. This is just not true. The evidence in the case overwhelmingly establishes that the lots were sold at the fair market value. The market value of the lots sold included the cost of installing the water and sewerage facilities, one-half of the cost of which the plaintiffs now wish to charge to the City of Bossier. The plaintiffs fully recovered the actual cost of installing the water and sewerage facilities and made full profit. The illegal contract was for reimbursement of 50% of the developer's actual cost. The developer is not entitled to recover twice. The plaintiffs have admitted total recovery. The doctrine of unjust enrichment is not available to the plaintiffs under the facts of this case.
I am of the opinion that grave injustice has been done to the taxpayers of Bossier City and that the only unjust enrichment resulting from the situation before us is the pocketing of taxpayer's money by these plaintiffs without any legal or factual right.
I respectfully dissent.
NOTES
[1] See also the earlier opinion overruling exception of no cause of action, 234 So.2d 210 (La. App.2d Cir. 1970).
[2] Civil Code Article 2131 provides:

"By payment is meant, not only the delivery of a sum of money, when such is the obligation of the contract, but the performance of that which the parties respectively undertook, whether it be to give or to do."
[3] Civil Code Article 2303 provides:

"To acquire this right, it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery."
[4] Civil Code Article 2304 provides:

"A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released."
[5] Civil Code Article 2301 provides:

"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
[6] Civil Code Article 1965 provides:

"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."