JONES, Judge.
Plaintiff, Harold Harp, sued the Town of Lake Providence for $7,200, the purchase price of a rotor and fly wheel shaft (tail shaft) for a Fairbanks-Morse generator which he alleged was ordered from him. In the alternative, he sues for the actual cost of the equipment, $5,650, together with $350 for his expenses on the theory of unjust enrichment.
The trial court denied recovery on the basis of contract because there was no contract in compliance with the provisions of LSA-R.S. 38:2211 requiring an advertisement for public bids unless this requirement was dispensed with by the declaration of an emergency by the public body. The trial court also denied recovery on the theory of unjust enrichment on the basis that the *170 town did not receive any benefit from plaintiff’s successful effort in providing the town with the generator tail shaft. Plaintiff appealed, seeking recovery on his alternative demand for unjust enrichment. We reverse and award plaintiff his actual out of pocket cost in acquiring the tail shaft.
The only issue is whether the Town of Lake Providence received a benefit from the tail shaft for its Fairbanks-Morse generator acquired at Harp’s cost.
Burton Stigen was employed early in 1973 by the Town as its power plant engineer. When he commenced his employment he found one of the generators in the power house not functioning. It was his opinion that the generator should be repaired because the Town needed the additional generating capacity. Stigen attended a regular meeting of the Mayor and Council of the Town in March or April, 1973, and sought authority to repair the defective generator. He left the meeting believing he had received such authority. Stigen concluded the generator needed a new tail shaft to effect its repair. He contacted several sources of supply and found that a new tail shaft would cost $25,000. He called Harp at his home in Sherman, Texas seeking a tail shaft at a lesser price. Harp came to Lake Providence about August 13, 1973, examined the tail shaft, and submitted a proposal to Stigen to acquire a tail shaft for the Town for $7,200. On August 31, 1973, while Harp was in Lake Providence taking exact measurements for fabrication of the shaft, he was given a written purchase order on the Town’s order stationery by Stigen to acquire the shaft for a recited price of $7,200. On September 11, Harp submitted suggested modifications of his original design by letter to Stigen. On September 17, Stigen, by letter to plaintiff on the Town’s stationery, acknowledged receipt of Harp’s letter of September 11, regarding alterations of the shaft and stated: “The proposed alterations on the extension shaft and crank shaft meet with the full approval of the City Counsel and myself.”
Plaintiff proceeded, at his expense, to have the tail shaft manufactured. It was delivered to the Town in March, 1974. The Town refused to pay for the shaft because no legal contract for its acquisition existed between Harp and the Town of Lake Providence. The Town’s records reflect no authorization in the minutes of any meetings of the Mayor and Council for the acquisition of the shaft. Harp concedes that the public contract law was not followed.
Where contracts with municipalities are illegal because of the failure to comply with the public contract statute recovery may still be had by the performing party when the parties are in good faith. The recovery is limited to the extent the municipality has benefited by the performance of the void contract. No recovery of profits, overhead or expenses are permitted. The award in such cases is based on the doctrine of unjust enrichment under Civil Code Art. 1965. See Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949) and Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943). The Supreme Court in Coleman v. Bossier City, 305 So.2d 444, approved the cited cases, saying:
“In these decisions, contracts for work performed or for supplies and materials were held to be null and void because of noncompliance with the public contract law, which (as noted) requires advertisement and competitive bidding. Nevertheless, the supplier or contractor was allowed recovery against the public body, not on the contract itself (which was held to be null and void), but rather on an unjust enrichment theory, Civil Code Article 1965, for the actual cost of the materials, services, labor, etc., but without allowance for overhead and profits.” (Emphasis added) Id. at page 445.
Harp was in absolute good faith. He received a purchase order for the shaft from the Town, and confirmation of the order following his modification of the design. The Town’s power plant engineer, Stigen, was in good faith in placing the order. He discussed repair of the generator with the Council. One member of the Council testified he believed an emergency was declared, and that Stigen was empow *171 ered to order the tail shaft. One Council member acknowledged Stegin’s presence at the meeting and that Stigen was empowered to repair the generator, although he denies Stigen was empowered to make the subject purchase. Harp discussed the repair of the generator with two of the Council members and with the Mayor. He testified that the Mayor, in January, 1974, urged him to attempt immediate delivery of the equipment.
While plaintiff was in the process of having the shaft manufactured, the Town was preparing this generator for effective operation when the tail shaft became available. In connection with this work, the main shaft was removed from the generator and sent to Texas to be polished. It was then discovered the main shaft was cracked and could not be repaired, and it was junked. Because the main shaft was not available, no attempt was made to place the generator in service when the tail shaft was later delivered to the Town.
The initial cost of the generator in question was $300,000-$350,000. When Harp ordered the new tail shaft, he was unaware that the generator needed not only a tail shaft, but a main shaft. He had no reason to be aware of this fact and was not employed to evaluate the complete generator. Harp was called by Stigen only to submit a proposal to provide the generator with a tail shaft. The defective main shaft came to light only after it was examined in Texas. There is no evidence in the record that the cost of a main shaft would have been prohibitive. The generator needed a main shaft at the time Harp was directed by written order of the Town to provide the tail shaft. The Town now has a generator which needs no tail shaft.
Benefit is defined by Webster’s Dictionary as follows:
“Anything contributing to an improvement in condition; advantage.”
In American Law Institute, Ch. 1, 1 Unjust Enrichment, Restatement of Restitution
sjc sC »fe * * *

Comment (b) What constitutes a benefit.

“A person confers a benefit upon another if he gives to the other possession or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other’s security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word ‘benefit,’ therefore, denotes any form of advantage. . . .’’At page 12
The Town now has a generator, originally costing in excess of $300,000 which will require less expense to place into service than it did before Harp complied, in good faith, with the void contract. With a new tail shaft available, the generator has a value of at least $5,650 greater than it had before the new tail shaft was provided. This is an obvious benefit to the Town. Under the rationale of Smith, Boxwell, and Coleman, supra, Harp is entitled to recover the actual cost he incurred in acquiring the tail shaft for the Town, or $5,650. He is not entitled to profit or expenses.
In concluding that Harp cannot recover under unjust enrichment because the Town received no “benefit” from the tail shaft, the trial court, in our opinion, committed error.
For the reasons assigned, we reverse the trial court and award plaintiff Harold Harp judgment for $5,650, plus whatever costs may be legally assessable against the Town of Lake Providence. Costs of this appeal are also assessed against the Town of Lake Providence.
Reversed and rendered.