LANDRY, Judge.
Defendants, The City of Baton Rouge, The Parish of East Baton Rouge and the Greater Baton Rouge Consolidated Sewer District, (Appellants), appeal from judgments awarding plaintiffs College Associates (College) and Chevron Oil Company (Chevron), (Appellees), recovery on the theory of unjust enrichment, of the partial cost of a sewer system constructed by Appellees and accepted by Appellants as part of Appellants’ municipal sewer system. Appel-lees have answered the appeal seeking an increase in the awards. We amend the judgments to increase Appellees’ recovery.
RELEVANT BACKGROUND INFORMATION
Subject sewer lines are situated in the northeast quadrant of the intersection of I — 10 and College Drive, a major intersection in the City of Baton Rouge. In 1968, a large portion of the then undeveloped subject area consisted of an 80 acre tract owned by the W. R. Aldrich Estate which parcel was bounded west by College Drive, north by lands of Para P. Aldrich, east by lands of the Witter Estate and south by I-10. Chevron desired to obtain from the Aldrich Estate a one acre tract situated *1067 near the northwest corner of the Aldrich property and fronting on College Drive, for use as a service station site. Negotiations for the purchase disclosed the fact that owners of the Aldrich property would not sell less than six acres. Being interested in only one acre, Chevron contacted a representative of the Howard Johnson Company through its local franchiser, College, to ascertain whether College was interested in acquiring a five acre parcel for construction of a motel. Upon College evidencing interest in the proposal, Appellees engaged A. E. Probst, a local developer, to assist in obtaining a rezoning of the Aldrich tract and approval of its subdivision to permit commercial use of the area. It was learned that subdivision regulations required that developers provide sewerage facilities for the area proposed to be subdivided as a governmental prerequisite to approval of all proposed subdivisions. An engineer, Toxie Craft, was employed to determine availability of a sewerage trunk line to serve subject area. Craft reported that an existing line located near the northwest corner of the Aldrich tract on the opposite side of College Drive, near Bawell Street, was available for a sewer tie-in. This information proved inaccurate when local officials pointed out that the Bawell Street line was already overloaded and not available for additional tie-ins. It was then discovered that the nearest available trunk line was approximately 5,000 feet distant from Chevron’s prospective station site, said line being on the south side of I — 10 almost due south of the southeast corner of the Witter tract, which parcel contained approximately 100 acres. To connect this line with Chevron’s proposed site, a trunk line would have to be laid beneath I — 10 northerly to a pumping station in the southeast corner of the Witter tract near Wards Creek, which bounds the Witter property on the east. The line route also required a right-of-way across the southern boundary of the Witter tract (parallel to I — 10).
During the negotiations between Appel-lees and the Aldrich Estate for purchase of the site and during the concurrent negotiations between Appellees and Appellants concerning the matter of sewerage tie-in, it became evident to Appellees, Appellants and local developers that the various properties in subject area possessed considerable potential for commercial development. Appellants, through its officials and agents, showed considerable interest in a development plan for the entire area and indicated their willingness to cooperate with potential developers (including others than Appellees) who were displaying interest in the area. The potential envisioned led to the conclusion that any sewer system constructed should be sufficient to accommodate development of the Aldrich and Witter tracts as well as other properties in the area. Although Chevron’s needs required only a small line, much larger facilities were required to serve the whole area. The Witter interests agreed to donate a right-of-way across their lands in exchange for Chevron’s agreement to build a line sufficient to serve the Witter property after its development. As Appellees’ agent, Probst negotiated with Appellants for construction of a sewer line at Appellants’ expense inasmuch as all parties concerned agreed that development of the area would greatly benefit Appellants by producing additional tax revenues and affording employment potential for local citizens. Appellants recognized the potential but lacked funds to construct the necessary sewer extension. On September 13, 1967, the Parish Council adopted Resolution 7319 which authorized transfer of $85,-000.00 from the budget of the Consolidated Sewer District to extend the trunk line to serve subject area. Later it was learned these funds had been previously committed to another project. On June 26, 1968, the Parish Council adopted Resolution 7766, authorizing allocation of $90,000.00 to the proposed project from the 1969 budget, when funds became available.
On May 5,1969, Chevron signed an agreement to construct the line at its own expense, an agreement routinely required by Appellants as a prerequisite to official approval of proposed subdivision plans. Chevron purchased six acres from the Aldrich Estate and transferred five acres thereof to *1068 College in which transfer it was agreed that College would pay 80% of the cost of the proposed sewer facilities and Chevron the remaining 20%. Relying on the above mentioned resolutions and the verbal assurances of Appellants which Appellees understood to be a commitment by Appellants to reimburse the cost of the entire project, Appel-lees constructed a sewer line the plans for which were previously approved by Appellants. The work was performed according to a contract between Chevron and Acadian Engineering Company, under the supervision of Toxie Craft as consulting engineer. The project included extending the existing line beneath I — 10; construction of a lift station north of 1-10 near Wards Creek; laying an 18-inch line from the lift station westerly along the southern boundary of the Witter tract to the Aldrich property; constructing a 15-ineh line northerly from the terminus of the 18-inch line; laying a 10-inch line from the end of the 15-inch main to Chevron’s site on College Drive. Other developers have built additional lines which tie into the 15-inch main laid by Appellees. The project aggregated $118,-134.88, of which sum Chevron paid $30,-312.02 and College paid $87,822.86.
In 1975, College sued Appellants seeking reimbursement, but limited its claim to $85,000 (the amount authorized by Resolution 7319). College based its demand on contract and, alternatively, on unjust enrichment. The trial court found an absence of contract but, relying on Pugh v. Town of Logansport, 235 So.2d 226 (La.App. 2d Cir. 1970), and Coleman v. Bossier City, 305 So.2d 444 (La.1974), gave College judgment on its alternative plea of unjust enrichment. Pursuant to said authorities, College was denied 25% of the amount it paid inasmuch as the record contained College’s stipulation that 25% of the contract price represented contractor overhead and profit. On this basis, College was granted judgment for $65,172.25.
Appellants moved for and were granted a new trial in the College case, on the basis of newly discovered evidence, namely, the May 5, 1969 agreement wherein Chevron undertook to construct the project at its cost and posted a surety bond to guarantee performance. Based on this agreement, Appellants third partied Chevron in the College suit. Chevron filed a separate action against Appellants claiming $30,312.02 paid by Chevron as its part of the construction cost pursuant to its arrangement with College. Chevron’s suit was consolidated with that of College.
The record before us includes the record in the first trial of College’s claim and additional testimony introduced principally on behalf of Appellees. The trial court concluded that the totality of evidence presented a confusing picture as to the intent of the parties concerning reimbursement of Appellees for the work in question. The court noted that while Appellees expected total reimbursement, Appellants intended to defray only the cost of crossing I — 10 and erection of a lift station. Despite finding that Appellees spent more than $85,000 on the entire project, the trial court granted recovery only for that portion of the work situated outside Appellees’ individual development area and on this basis awarded $85,000 with no deduction for overhead or profit, contrary to the initial award. In so concluding, the trial court found there was no profit to Appellees since Appellees had not acted as contractors and that all funds expended by Appellees represented actual expenditures which they were entitled to recoup.
THE ISSUES
Appellants maintain that, under the holding of Miller v. Housing Authority of New Orleans, 249 La. 623, 190 So.2d 75 (1966), the principle of unjust enrichment is inapplicable herein because a contract existed with Chevron pursuant to which Chevron agreed to construct the entire project at its cost. Alternatively, Appellants contend that it agreed to reimburse Chevron the cost of only a portion of the line, namely, the crossing of 1-10 and construction of the lift station.
Conversely, Appellees urge that the resolution adopted by Appellants and the re *1069 peated promises and representations of Appellants’ officials, representatives and employees, led Appellees to believe and expect the cost of the entire project would be refunded. It is also contended that the dollar figures mentioned in Resolutions 7310 and 7766 were merely cost estimates and were not indicative of Appellants’ total commitment to the project.
We find the issues to be: (1) Did a specific contract exist thereby restricting the parties to its terms and precluding application of the unjust enrichment doctrine; (2) If there was no contract, do the circumstances warrant application of the unjust enrichment doctrine; and (3) If the unjust enrichment doctrine applies, what reimbursement is due Appellees.
THE TESTIMONY
Chevron’s investment manager, C. R. Gui-dry, participated in the negotiations with Appellants concerning the sewer system. He stated that adoption of Resolutions 7319 and 7766 prompted his recommendation that Chevron purchase six acres from the Aldrich heirs, it being his distinct understanding that Chevron would be reimbursed the total cost of the required sewer extension. After completion of the work he learned that Appellants contemplated less than 100% reimbursement. This development occasioned his letter of October 1, 1971, to Appellants requesting repayment of $100,082.93, which had been spent on the system as of that date.
Donald J. Fleishaker,. managing general partner of College, testified that during early negotiations with Appellants, it was estimated that total cost of the proposed system would run between $85,000.00 and $90,000.00. From the discussions, he believed that Appellants would make full reimbursement. He referred to an agreement between Chevron and various developers of subject area whereby Chevron and College agreed to construct the sewer system in consideration of which the other developers would bear the cost of drainage and streets and lighting for the remainder of the area. Fleishaker’s testimony establishes that subdivision and rezoning would not have been allowed in the area unless the developers submitted a detailed comprehensive plan for the entire area involved.
Toxie Craft, consulting engineer on the project, also participated in the negotiations between Appellants and Appellees. He explained that he personally approved payments to the contractor based on his computation of completed bid quantities. In addition, he itemized the cost of the various components of the contract pursuant to which the work was performed.
Ray W. Burgess, Director, City-Parish Department of Public Works, confirmed his writing Appellees a letter acknowledging the appropriation of $85,000.00 in the budget of the Consolidated Sewer District, which sum was earmarked for the project in question. Burgess also conceded that considerable benefit accrued to the City-Parish government from the development made possible by construction of the sewer system involved herein.
A. E. Probst attested his negotiations with Appellants relative to the proposed system and his detailing to them the amount of sales and ad valorem taxes to be generated by commercial development of subject area. He testified unequivocally as to assurances made to him by Appellants’ Mayor-President that Appellants would provide the required sewerage facilities. We note that Probst’s testimony appears to restrict Appellants’ commitment to that part of the project situated outside the area presently known as Corporate Square. Probst acknowledged that, absent a contrary agreement, it would be the developer’s responsibility to pipe sewerage to the nearest existing trunk line. He explained Chevron’s agreement to install sewerage at Chevron’s expense as a routine requirement of governmental officials before official consideration of a subdivision request.
We find, as did the trial court, that there was no contract in this instance. We so conclude because the record discloses there was no meeting of the minds of the parties on the indispensable element of price. Despite the mentioned resolutions, the assur- *1070 anees of the Mayor-President and Director of Public Works, Burgess, and the representations of other governmental representatives, the record as a whole convinces us there was never a complete understanding between the parties as to their precise respective intentions concerning cost reimbursement.
Absence of a contract, however, does not preclude Appellees’ right to relief. In Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3d Cir. 1974), plaintiff was allowed recovery for repairs performed on defendant’s boat. In that case the court found no contract between the parties but granted recovery upon finding that defendant was unjustly enriched by work performed by plaintiff in good faith, which services benefited defendant. The measure of recovery granted was in quantum meruit, the value of goods and services actually rendered for and accepted by defendant.
The same result was reached in Daspit v. City of Alexandria, 342 So.2d 683 (La.App. 3d Cir. 1977) wherein plaintiff sued on an alleged contract entered into by defendant’s mayor without authorization by the municipal governing authority. Finding no contract for lack of authorization the court, nevertheless, granted recovery under the principle of unjust enrichment because defendant accepted and benefited from work performed by plaintiff.
Pugh v. Town of Logansport, supra, is analogous to the case at hand in that it involved sewer work performed pursuant to an invalid contract. Applying the unjust enrichment principle, the court awarded plaintiff recovery in quantum meruit because the officials of the municipality were aware of the construction and agreed to purchase the sewer line when funds became available.
The foregoing jurisprudence of our intermediate appellate courts has been recognized, ratified and approved by the Supreme Court in Coleman v. Bossier City, supra, which involved construction by developers of a sewer and water facility integrated into defendant’s sewerage and water systems. The Court found that refund contracts between the parties, pursuant to which defendant City agreed to reimburse plaintiffs fifty percent of plaintiffs’ actual cost, were void for failure to comply with public bidding laws, but that, nevertheless, plaintiffs could recover pursuant to La.C.C. Article 1965 which allows recovery from one who has been unjustly enriched at the expense of another. Finding plaintiffs in good faith and also noting an absence of fraud, the Court concluded that since the municipality received the actual value of the materials and services furnished, equity demanded payment of the value thereof. In affirming the decision of the Second Circuit Court of Appeal, the Court in Coleman awarded the developers fifty percent of the actual cost and expenses which were paid out to the contractors and engineers for construction of the facilities without deduction for overhead or profits. The Court’s reasoning was based on the finding that the plaintiff developers made no profit as such on the contract between plaintiffs and defendants and that the award represented only actual cost of the developers. Otherwise a deduction for profit earned and overhead costs would have been appropriate under the jurisprudence. Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943).
In this instance, there is no hint whatsoever of fraud and no question of Appellees’ good faith. We find, therefore, that the trial court correctly allowed recovery pursuant to La.C.C. Article 1965 and the above cited jurisprudence.
We also find that, in the second trial, the Trial Judge was correct in refusing to deduct from Appellees’ recovery 25% thereof as the profit and overhead of the contractor. We think that Coleman, supra, indicates that in cases of this nature, recovery by the developer should not be reduced by the profit and overhead of the contractor and engineer of the facilities. Appellees were not the contractor or engineer in this instance and actually disbursed the total contract price.
*1071 We find the record supports College’s claim to $94,507.90 (80% of $118,134.88) and Chevron’s demand for $23,626.98 (20% of $118,134.88). We also note the record contains a stipulation between College and Chevron whereby it was agreed that Chevron paid $6,685.04 more than called for under the contract with Acadian and that, therefore, Chevron’s award should be increased by that amount with a commensurate decrease in the judgment in favor of College.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and judgment rendered herein in favor of Chevron against Appellants in the sum of $30,312.02 and in favor of College against Appellants in the amount of $87,822.86 with legal interest thereon from date of judicial demand. Appellants are cast for such costs as they are legally liable.
Amended and rendered.