PONDER, Judge,
dissenting.
I am unable to agree with the majority’s conclusions on both the law and the facts.
Evidently the majority has come to the conclusion that plaintiffs under the situation of the instant case are entitled to recovery of their entire cost if they show that that was their understanding without regard to the reasonableness of their belief that they were so promised. I believe this to be contrary to the spirit of, if not the exact holding of, Coleman v. Bossier City, 305 So.2d 444 (La.1974), in which recovery was allowed of only what the City had agreed to, one-half of the cost, not the entire cost.
I believe that the chronology of events was as follows.
When the owners and prospective purchasers discovered they would be unable to tie into the sewer on Bawell, immediately across College Drive, the next available trunk line was on the north side of Perkins Road. The master plan for the consolidated sewer district provided for the ultimate extension of this line northward under Interstate I — 10 to a lift station on the west bank of Ward’s Creek. In addition to plaintiffs herein, others, who were working on the development of Concord Place immediately south of Interstate 1-10, would benefit. The Parish Council in Resolution 7319 adopted on September 3, 1967, authorized the extension of a 15-inch trunk line northward from Perkins Road “to serve properties lying north of Interstate Highway 1-10 between College Drive and Jefferson Place Subdivision,” and authorized the transfer of $85,000.00 for that purpose. When it was discovered that the funds were not available, the Capital Improvements Expediting Committee on September 20, 1967 made a report to the Parish Council, which accepted it on September 27, for the reconsideration of the installation of a sewer trunk line extension from Perkins Place (Road?) to the northside of Interstate Highway No. 1-10.”
On June 26, 1968, the Parish Council adopted Resolution 7766 declaring an intention to include in the 1969 budget an item of $90,000.00 “for the purpose of extending a 15-inch trunk line from Perkins Road northward to Interstate Highway 1-10 in order to serve properties north of the Interstate between Jefferson Place Subdivision and College Drive.”
The next day Mr. A. E. Probst, who was representing the landowners and purchasers, secured from the Mayor a letter addressed to him expressing an intention to include in the budget an item for $90,000.00 “to extend a sewer trunk line with the necessary lift station, from Peggy Drive to the north side of Interstate 1-10 along Ward’s Creek.” Emphasis added. Mr. Probst stated he asked for the letter to reassure his people and that it accurately reflected the understanding with the City-Parish.
By agreement, dated May 5, 1969, between the City-Parish and Chevron Oil Company the .latter agreed to install a sanitary sewer line and lift station to prove wyes for Lots X, Y and Z of the L. A. Holland property. While there has been testimony that this was the required and routine method to effect subdividing, never *1072 theless, it is more than of passing note that no counter letter or similar • understanding was required or even suggested by the partners of College Associates, who were lawyers and sophisticated real estate developers, or by Chevron Oil Company who had both legal and property management divisions.
Much has been made of the fact that the lines installed were of larger size than was required for the plaintiffs’ sole use. However, the entire situation should be examined. Mr. Fleishaker testified that College Associates and Chevron Oil Company agreed to take care of the sewerage requirements for not only their property but also for that property that later became Corporate Square, in return for those developers taking care of the paving, lighting and other requirements for the development of the entire area. Also as a condition of the granting of a servitude across the Witter property the grantors required installation of sufficient size to accommodate that property. There was no testimony that the excessive size was required by the City-Parish.
On October 1, 1971, Mr. C. R. Guidry, the investments and retail manager of Chevron Oil Company, wrote Mayor Dumas, saying:
“By Resolution No. 7319 adopted by the Parish Council on September 13, 1967 it was indicated that we would be refunded the major portion of this expenditure.” (Emphasis added)
The letter of R. H. Wilkins, Retail Property Representative of Chevron Oil Company, dated March 19, 1974, had exactly the same words.
Despite his letter of October 1, 1971, concerning a partial reimbursement, Mr. Gui-dry testified on the trial that it was always his understanding that Chevron would be reimbursed the entire cost. He did not testify of the source of his understanding, even stating that he had never met with a representative of the City-Parish.
Mr. Fleishaker, the managing party of College Associates, testified in regard to his understanding of reimbursement of a major portion of the cost.
Mr. Probst testified that it was never the intention of the parties that Chevron Oil be reimbursed for the cost of building a sewer system within the 80 acre tract of land now known as the Corporate Square development.
I therefore conclude that the City-Parish promised to pay $90,000.00 for the extension of the sewer trunk.line from Perkins Road to and under Interstate 1-10 to a lift station and including the lift station to be situated on the bank of Ward’s Creek. The City-Parish has already paid out $32,000.00 for the extension to Concord Place. I therefore believe that there should be judgment for the cost of the extension from Concord Place to and including the lift station but not more than. $58,000.00.
The testimony of plaintiffs to the contrary is vague, general, not attributed to a definite source and contradictory. However, even if plaintiffs believed that they were to be reimbursed the entire cost, they were not justified in doing so and they should be reimbursed only to the extent that they could reasonably believe they had been promised.
I therefore dissent.