412 So.2d 1131 (1982)
Willie DAVIS, Plaintiff-Appellee,
v.
FRANKLIN PARISH SCHOOL BOARD, et al., Defendants-Appellees,
F. B. Etheridge, Defendant-Appellant,
Reed & Sons Hardwood, Inc., Intervenor-Appellee.
No. 14766.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Rehearing Denied April 12, 1982.
Writ Denied June 4, 1982.
*1132 Gravel, Robertson & Brady by David W. Robertson, Anna E. Dow and Dee D. Drell, Alexandria, for defendant-appellant, F. B. Etheridge.
North La. Legal Assistance Corp. by Randy Hillhouse, Winnsboro, for plaintiff-appellee.
Glynn D. Roberts, Asst. Dist. Atty., Rayville, for defendant-appellee, Franklin Parish School Bd., et al.
Farrar, Perry & Jefferson by Stephen A. Jefferson, Monroe, for intervenor-appellee, Reed & Sons Hardwood, Inc.
Before MARVIN, SEXTON and NORRIS, JJ.
En Banc. Rehearing Denied April 12, 1982.
MARVIN, Judge.
F. B. Etheridge, a co-defendant with the School Board, appeals a judgment which among other things, declared null, and enjoined implementation of, a lease of the Board's 16th section lands to Etheridge, and rejected Etheridge's demands for damages against the School Board.
We affirm the judgment annulling the lease but reverse and render judgment for Etheridge for the expenses Etheridge incurred that we find are not in excess of the value of the benefits received from his services and labor. Coleman v. Bossier City, 305 So.2d 444 (La.1974); Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949).
The lease arose out of the Board's desire that its wooded lands in the 16th section be cleared and drained and made suitable for farming, and out of the Board's verbal instructions to prospective bidders that it would consider a bid for a farm lease of its lands in return for the lands being cleared and drained.
The Board ran this advertisement:
"The Franklin Parish School Board advertises for sealed bids for the clearing *1133 and drainage of the wooded acreage contained in the 16th Section property located in Ward 3 ... at the Franklin Parish School Board Office, 805 Jackson St., Winnsboro, Louisiana 71295.
"Specifications may be obtained at the School Board Office. * * *"
There were no written plans or specifications. Etheridge was the successful bidder among four bidders, all of whom offered to clear and drain the lands in return for a lease of the land for a number of years. The president of the defendant Board was authorized to, and did, execute a lease to Etheridge on May 2, 1979, to be effective June 1, 1979, for a term of eight years.[1] Between those dates, Etheridge hired timber cruisers, sold the timber to Reed and Sons Hardwood, Inc., and contracted with others and began preliminary work with bulldozers.
This action was filed and a TRO issued on May 31, 1979, to halt further work on the project. Etheridge's timber purchaser intervened and Etheridge brought a third party demand against the Board.
The trial court annulled the timber deed from Etheridge to the intervenor purchaser and gave judgment in favor of that intervenor and against Etheridge for $94,300, the amount that was paid Etheridge for the timber deed on May 7, 1979.

PLAINTIFF'S RIGHT OF ACTION
The threshhold issue questions plaintiff's standing or right to bring the action. CCP 927, 681. LRS 38:2220 B. Plaintiff is not a property owner or parent of school children, but resides with his mother in the parish a few hundred yards from the wooded lands where he sometimes hunts wild game. He does pay sales taxes in the parish which accrue to the defendant Board. In League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980), the Supreme Court was careful to point out that where a citizen was seeking to restrain unlawful action by a public entity, that citizen was not required to have the special and peculiar or particular interest required of a plaintiff who was seeking to compel the performance of a public duty.
"In Bussie v. Long, supra, ... the Court of Appeal recognized an exception to the requirement of a particular or special interest...
"Unlike the taxpayers in Bussie, supra, plaintiffs here do not seek to restrain ... Instead, they seek to compel ..." 381 So.2d at p. 447.
Insofar as League of Women Voters applies to circumstances such as are presented here, we must respectfully disagree with the observation in Pierce v. Board of Supervisors, Etc., 392 So.2d 465, 467 (La. App. 1st Cir. 1980), that League of Women Voters "... appears to ... overrule ... Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941); Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Upper Audubon Association v. Audubon Park Commission, 329 So.2d 206 (La.App. 4th Cir. 1976), writ denied...". This plaintiff is attempting to restrain action by a public body that affects the public fisc, and we must find that he has an interest, however small and indeterminable, sufficient to afford him a right of action. See Woodard v. Reily, supra; Stewart v. Stanley, supra; Upper Audubon Association v. Audubon Park Commission, supra.
Where a public body substantially complies with the Public Lease Law or the Public Bid Law, mere irregularities and informalities in the procedures leading up to the eventual contract do not necessarily render the contract null and void. See *1134 West Calcasieu, Etc. v. Cajun Marine, Etc., 348 So.2d 169 (La.App. 3d Cir. 1977), writ refused; Tide Equipment Co. v. Pointe Coupee Par. Police Jury, 312 So.2d 154 (La.App. 1st Cir. 1975), writ refused.
The Public Lease Law requires that the public body shall advertise a short summary of the terms and conditions and the purpose of the proposed lease. LRS 41:1214.
The Public Bid Law expressly requires that all public work be advertised and let by contract to the lowest responsible bidder who has bid according to the contract, plans, and specifications as advertised, and that a good and solvent bond or guarantee be executed for the performance of the contract. LRS 38:2212 A, 2216. The requirement for the "advertisement", as well as the requirement in § 2212 B that addenda to the specifications be advertised, necessarily contemplates that somewhere, if not in the advertisement, the specifications for the work be in writing and available to prospective bidders. See 64 Am.Jur.2d, "Public Works and Contracts", §§ 50-53, 74. See also W. R. Aldrich & Co. v. Gravity Drainage District No. 1, 238 La. 190, 114 So.2d 860 (1959).
The advertisement may contain only a general description of the work and does not have to contain the detailed specifications. Where the advertisement states only that the public body solicits bids for the clearing and drainage of specified lands and refers to specifications being available, those specifications should at least be in writing and should state the purpose for which the clearing and drainage is to be done, no matter how broadly they are written.
We find then that under the circumstances of this case, the Board neither followed the Public Bid Law nor the Public Lease Law in executing the contract of lease to Etheridge. We do not say that the procedures under the two laws might not, with some ingenuity, be combined into one advertisement and written specifications to accomplish what the Board desired. Compare the effort to combine the procedures of two industrial development laws in adams Industries, Inc. v. City of Monroe, 385 So.2d 896 (La.App. 2d Cir. 1980).
Similarly to LRS 38:2216, LRS 38:2241 provides that whenever a public body enters into an applicable public works contract, the representative of that body shall require a bond with good, solvent, and sufficient security, for the faithful performance of the contract. Etheridge estimated at the trial that it would cost at least $360 per acre to clear and drain the 500 wooded acres, according to his understanding of what was necessary to "clear and drain". Section 2216 requires that the party to whom the public contract is awarded shall furnish a good and solvent bond for the faithful performance of his duties. Any public works contract made contrary to the provisions of the Public Bid Law shall be null and void. § 2220 subd. A.
The failure to give the required bond for a public work is not a mere formality or irregularity but is a substantial enervation of the Public Bid Law and renders the contract null and void. §§ 2216, 2220, 2241. See Construction Materials v. American Fidelity, 388 So.2d 365 (La.1980). The protection of the law, usually spoken of in terms of the interest of those who furnish labor and material for the public work, ultimately inures to the interest of the public because of the good and solvent bond or guarantee that the work will be performed at the price contracted for, and free and clear of liens or claims against the public fisc. LRS 38:2241. See Slagle-Johnson Lumber v. Landis Const. Co., 379 So.2d 479 (La.1979); State v. Miller, 169 La. 914, 126 So. 422 (1930).
The Public Lease Law should have been followed because the Board, on its own initiative, was seeking to give a farm lease and the timber on the lands in return for the clearing and draining of the land for farming purposes. The Public Works Law should have been followed, and a performance bond required, because the Board was advertising for a public work of clearing and draining its lands. The trial court's *1135 judgment annulling the contract is correct because the Board did not substantially comply with either of the applicable laws.

ETHERIDGE'S DEMANDS AGAINST THE BOARD
It has long been recognized that one who performs in reliance upon a prohibited, but good faith, contract is entitled to recover the cost of services and materials, without overhead and profit, expended that inured to the benefit of the other contracting party. See Coleman v. Bossier City, supra, and authorities discussed therein by former Justice Tate. As Coleman explains, this recovery may be allowed under several theories (as are argued here), but the "... essential purpose is to afford a recovery to a person who has changed his position in reliance upon a nonenforceable contract, at least to the extent of the expenses so incurred by him which are not in excess of the value of the benefits received by the other party." 305 So.2d at 444. Emphasis ours.
An earlier pronouncement observed:
"An enforced settlement of this kind not only does justice and equity between the parties, but also it provides the protection to the taxpayers that the statute under consideration contemplates. At the same time it is notice to contractors and furnishers of materials that their dealings in the future with public agencies must be conducted in accordance with the law's provisions; otherwise the anticipated profits and attendant expenses will be denied them and their efforts will go for naught." Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18, 22 (1949), quoting Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, 631 (1943). Emphasis ours.
Etheridge testified that after the May 2, 1979, lease was executed, he obtained authorization to begin work from the Board, he hired timber cruisers, executed the timber deed for which he received $94,300, and contracted with Givens by paying them $45,000 in advance which they would work out at $75 per hour per tractor (bulldozer) in the clearing operation. Four tractors were moved from various locations to the job site and worked, according to Etheridge, about 10 hours a day for four days. These tractors were moved from the site after the work was enjoined. Etheridge paid a total of $366.47 for the moving of the tractors to and from the site.
Etheridge also claimed to have paid $4,750 for the rental of a truck and trailer but could not or did not explain to whom this expenditure was made or how the expenditure related to the site work. He also claims to have paid or incurred almost $6,000 in attorney fees in this action.
Certainly Etheridge should recover the expense of moving the tractors to and from the job site ($366.47) and the expense of hiring or operating the tractors on the site for four days. The Board does not contest the assertion that the site work benefitted the Board. Etheridge testified that two tractors were rented from Givens for $75 each per hour and charged against the $45,000 advanced to Givens. Etheridge testified that he "charged" [others?] $65 per hour for one of his tractors and $55 per hour for the other. Rather than extending this already protracted litigation by a remand, we shall assess the award in this area:

Givens tractors rental: $6,000[2]
Etheridge tractors, discounted from the
amount that would have been charged
others: 4,320[3]
 ___________
 TOTAL $10,320.

Before the contract, the Board assumed that the timber on its 16th section lands was worth about $15,000 and that this timber would be "given" to the successful bidder along with a farm lease. Etheridge hired expert timber cruisers to reveal a *1136 much greater quantity of timber. The Board now knows the exact quantity of timber and should be able to use this knowledge to the public benefit in dealing with the property. Etheridge expended $3,465 for the timber cruise. We will include this amount in the recoverable damage. Etheridge's other attendant expenses that did not benefit the Board will not be awarded. Smith, supra; Coleman, supra.
We do not consider Etheridge's attack on the constitutionality of the Public Lease Law because this issue was not raised in the lower court. Johnson v. Welsh, 334 So.2d 395 (La.1976); Greer v. Greer, 346 So.2d 846 (La.App. 1st Cir. 1977), writ denied. Reed and Sons Hardwood, Inc. did not appeal or answer the appeal and Etheridge does not complain about that judgment against him.
For reasons assigned, the judgment appealed, insofar as it rejected Etheridge's demands against the Board, is in that part REVERSED and that part of the judgment is hereby rendered to award judgment in favor of Etheridge and against the School Board for $14,151.47 with legal interest from judicial demand, and in all other respects, the judgment appealed is AFFIRMED at the cost of the defendant Board, here and below.
SEXTON, Judge, concurring.
This public body wanted to clear its "school lands" so it could farm them as soon as possible for revenue purposes. The Board let it be known that it would trade a free lease for the suitable clearing of the section.
The majority requires that the Public Bid Law and the Public Lease Law be read together and conformed to under these circumstances. I view this action of the Board as a public work rather than a leasethe lease being simply the consideration the school board "paid" for the clearing of the land. I would therefore only require that the Board adhere to the Public Bid Law. The Public Lease Law requires that the property be leased to the highest bidder and the Public Bid Law requires that the work be given to the lowest bidder. The Public Lease Law is somewhat more technical that the Public Bid Law but both have the same basic purpose, to protect the public fisc. However, in my view, a public body cannot be expected to conform to both.
I agree with all other aspects of the majority opinion and the result, being of the view that the Public Bid Law was not substantially complied with.
NOTES
[1] The lease required the lessee to:

"1. Cut, pile, and burn all woodlands on 16th Section.
"2. Dispose of all timber on said land as contractor deems necessary.
"3. Drain lowlands suitable for farming when land can be drained into existing ditcheselevations permitting.
"4. Cut timber and spread spoil on old ditches."
The lease imposed forfeiture conditions and maintenance obligations on the lessee and provided that all improvements placed on the premises would become the property of the lessor.
[2] $75 × 10 hrs. × 4 days per tractor.
[3] $65-$6.50, or $58.50 per hour for one tractor. $55-$5.50, or $49.50 per hour for the other tractor.