PLAN DE BIENESTAR DE SALUD DE LA CONFERENCIA LABO-
RISTA DE PUERTO RICO, demandante y recurrente, *v.*
HON. ALCALDE DE CABO ROJO, SEÑOR PEDRO FRANQUI
ACOSTA, demandado y recurrido.

*Número:* R-83-201 *Resuelto:* 21 de octubre de 1983

*Nicanor Laguillo*, abogado de la recurrente; *Eugenio Sánchez
Ruiz, Belford Torres Vélez* y *Belén Sosa*, abogados del recu-
rrido.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del
Tribunal.

Los empleados de la limpieza de Cabo Rojo son miembros de la agrupación denominada Sindicato Insular Único de Empleados Municipales de Puerto Rico—Capítulo Municipio de Cabo Rojo. El Secretario del Trabajo y Recursos Humanos certificó a esta organización como una "agrupación *bona fide* de servidores públicos" a los fines de la Ley Núm. 139 de 30 de junio de 1961 (3 L.P.R.A. sec. 755). El sindicato está a su vez afiliado a la Confederación Laborista de Puerto Rico.

Con la participación del Sindicato y la Confederación los empleados de la limpieza se reunieron con el Alcalde de Cabo Rojo, Hon. Pedro Franqui Acosta, para discutir condiciones de trabajo. Como resultado de estas conversaciones el municipio emitió el 1 de marzo de 1980 una "Orden Administrativa", firmada por el alcalde, la agrupación de los empleados de la limpieza y la Confederación Laborista. El formato y el contenido de la orden siguen generalmente el patrón de un convenio colectivo. Otra orden sustancialmente igual se promulgó el 1 de julio de 1981, para regir hasta el 1 de julio de 1984.

En el Art. XIV de la segunda orden, el municipio se comprometió a pagar a una entidad participante del Plan de Bienestar de la Confederación Laborista de Puerto Rico la cantidad de veinticinco dólares mensuales por empleado de la limpieza. Igual suma sería aportada por cada empleado. De conformidad con este acuerdo, el Sindicato contrató con Plan Comprensivo de Salud, Inc. la prestación de servicios médicos a sus miembros. Plan Comprensivo de Salud, Inc. es una entidad certificada por el Comisionado de Seguros para administrar planes de salud.

Plan Comprensivo de Salud, Inc. prestó los servicios requeridos. El municipio les descontó a los empleados concernidos y le pagó al Plan la cuota correspondiente a los obreros de la limpieza, pero no satisfizo por entero la cuota patronal. No se ha hecho planteamiento alguno de que la suspensión de estos pagos se efectuó bajo las disposiciones

del Art. 3 de la Ley Núm. 98 de 25 de junio de 1962 (3 L.P.R.A. sec. 756), por razón de deficiencia en los servicios.

El 4 de mayo de 1982 el Plan demandó por la suma de veinte mil dólares alegadamente adeudados por los servicios prestados conforme a la orden administrativa. El Alcalde de Cabo Rojo, Hon. Pedro Franqui Acosta, solicitó sentencia sumaria, entre otras razones, porque la orden administrativa firmada por él constituyó un acto nulo, *ultra vires*, ya que ni él ni el municipio podían acordar un convenio colectivo con asociación alguna de empleados. El Tribunal Superior dictó la sentencia sumaria requerida. El Plan ha acudido en alzada a este foro.

■ Independientemente de la naturaleza jurídica del municipio en Puerto Rico, resulta claro que las obligaciones que contraiga se rigen por principios de Derecho civil, sujeto a estatutos que modifiquen tal situación.

■ Los contratos administrativos se rigen normalmente, en ausencia de régimen especial, por la teoría general de los contratos. J.-M. Auby y R. Drago, *Traité de Contentieux Administratif*, 2da ed., París, Librairie Générale de Droit et de Jurisprudence, 1975, T. II, pág. 480. Ello significa que la doctrina del enriquecimiento injusto, entre otras, es aplicable a determinadas situaciones en que una de las partes contratantes es un organismo público. S. de 22 de enero de 1975, núm. 8, Aranzadi, XLII Repertorio de Jurisprudencia 20; F. Garrido Falla, *Tratado de Derecho Administrativo*, Madrid, Centro de Estudios Constitucionales, 1979, Vol. II, pág. 12 y ss.

La doctrina del enriquecimiento injusto se remonta a tiempos de Justiniano. Para su historia, que incluye el desarrollo de la acción de *in rem verso* y del concepto de los cuasicontratos, véanse: J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1956, T. II, Vol. II, pág. 603 y ss.; J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. XII, pág. 763 y

ss.; G. Ortega Pardo, *Cuasi-contratos Atípicos*, 1 An. Der. Civ. 493 (1948).

Ni el Código Civil francés ni el español formulan reglas generales sobre el enriquecimiento injusto. Aunque se admite que el número de circunstancias a las que puede aplicarse es indeterminado, los referidos códigos se ocupan tan solo de un grupo pequeño de ellas. Manresa, *op. cit.*, pág. 764; G. Marty y P. Raynaud, *Droit Civil*, París, Ed. Sirey, 1962, T. II, Vol. I, pág. 310. El desenvolvimiento de la regla ha ocurrido principalmente a través de la doctrina y la jurisprudencia. Puig Brutau, *op. cit.*, pág. 606.

La jurisprudencia española ha aplicado la doctrina del enriquecimiento injusto en casos análogos al de autos. En la S. de 22 de enero de 1975, *supra*, el demandante había construido una obra para un municipio. El permiso para la obra había sido dado por el alcalde sin contar alegadamente con el ayuntamiento en pleno, el cual era el órgano administrativo competente. Tampoco se había cumplido, argumentaba el municipio, con diversas formalidades necesarias para la validez del contrato. El Tribunal Supremo de España resolvió que, aparte de la perspectiva contractual, "no puede ignorarse la existencia en el campo del Derecho Administrativo de otras fuentes de las que surgen obligaciones . . ." (pág. 23); que, aunque fuese nulo el contrato, el enriquecimiento injusto experimentado le imponía al municipio la obligación de resarcir al contratista "no sólo por razones de equidad, sino también de seguridad jurídica . . ." (pág. 24). Al mismo efecto: S. de 29 de octubre de 1980, núm. 3964, Aranzadi, *op. cit.*, T. XLVII, pág. 3213; S. de 3 de noviembre de 1980, núm. 4255, Aranzadi, *op. cit.*, T. XLVII, pág. 3430; S. de 21 de noviembre de 1981, núm. 5267, Aranzadi, *op. cit.*, T. XLVIII, pág. 4220.

El principio jurídico del enriquecimiento sin causa en Derecho civil tiene sus límites. No puede invocarlo el gestor de mala fe, por ejemplo, ni surte efecto en situaciones en que su aplicación violentaría un criterio de política pública.

Puig Brutau, *op. cit.*, pág. 615 y ss.; Garrido Falla, *op. cit.*, pág. 16.

Por vía de comparación puede afirmarse que la doctrina del enriquecimiento injusto es conocida también en Inglaterra y Estados Unidos, aunque su historial y lineamientos son distintos. 9 *Halsbury's Laws of England*, 4ta ed., Londres, Ed. Butterworths, 1974, pág. 434 y ss.; C. Tooke, *Quasi-Contractual Liability of Municipal Corporations*, 47 Harv. L. Rev. 1143 (1934). En Estados Unidos se han desarrollado las teorías del contrato implícito, del impedimento en equidad (*estoppel*) y del propio enriquecimiento injusto para mitigar los rigores de la antigua regla de que toda acción *ultra vires* impide el resarcimiento, no importa las circunstancias, contra una corporación municipal. 10 *McQuillin Mun. Corp.* (3ra ed.), Sec. 29.110, pág. 506 y ss. Hay gran variedad de puntos de vista entre los estados, la mayoría de los cuales parece aferrarse todavía a la antigua regla. Una minoría creciente, no obstante, le está imponiendo responsabilidad a los municipios que se beneficien injustamente de sus propios actos *ultra vires*. Note, *Bak v. Jones County: The Status of Quasi-Contractual Recovery from a Municipal Corporation*, 19 S.D.L. Rev. 485 (1974); Tooke, *op. cit*, pág. 1168 y ss. Véanse: *Hurdis Rlty., Inc.* v. *Town of North Providence*, 397 A.2d 896 (1979); *Edwards* v. *City of Renton*, 409 P.2d 153 (1965); *College Associates* v. *City of Baton Rouge*, 369 So. 2d 1066 (1979); *Dolezal* v. *City of Cedar Rapids*, 326 N.W.2d 355 (1982).

En el caso de Puerto Rico, las situaciones a las que se ha enfrentado hasta ahora el Tribunal no han conducido a la aplicación de la doctrina del enriquecimiento injusto. En *Tomasini* v. *Municipio de Ponce*, 50 D.P.R. 804, 808 (1936), un empresario contrató y llevó a cabo la construcción de una obra sin que el alcalde cumpliese con el requisito estatutario de celebrar una subasta. El Tribunal resolvió que de estos hechos "no podía surgir una responsabilidad implícita por los beneficios recibidos". En *González* v. *Municipio*, 61

D.P.R. 369 (1943), el Tribunal rehusó conceder resarcimiento en el caso de un contrato contraído sin que se hubiese consignado en el presupuesto municipal partida alguna para atender el gasto correspondiente. Véanse, al mismo efecto, *Humacao Lumber Co.* v. *Am. Surety Co.*, 59 D.P.R. 165 (1941); *San Miguel, Etc. & Cía* v. *Municipio*, 72 D.P.R. 391 (1951), y las otras decisiones citadas en estas sentencias.

■ Un trazo común une estos fallos. La doctrina del enriquecimiento injusto no se considera aplicable, como ocurre en muchas otras comunidades, cuando su aplicación contraría una clara política pública, plasmada en un estatuto o, podríamos añadir, en la Constitución.

■ El caso de autos presenta una situación diferente. No hay nada en nuestra legislación, orgánica o de otra naturaleza, que condene la contratación entre un municipio y una asociación certificada de servidores públicos respecto a la suscripción a un plan de servicios médico-hospitalarios. Por el contrario, nuestra legislación la promueve. Lo que sucede aquí es que la contratación ocurre en el contexto de algo semejante a un convenio colectivo, acto no permitido a nuestros ayuntamientos. Mas este pleito no trata de poner en efecto tal "convenio colectivo". Lo que se solicita es que se honre la cláusula, enteramente separable, relativa al acuerdo para mejorar los servicios de salud a los empleados contratantes. Los hechos de este caso ni siquiera demuestran que el acuerdo relativo a los servicios de salud represente un acto *ultra vires*. También es dudoso cuestionar la facultad de los empleados de la limpieza de Cabo Rojo de gestionar la negociación de la contratación concernida a través de entidades a las que estén afiliados. Aun suponiendo, no obstante, que el acuerdo logrado sea anulable o aun nulo por razón de no haberse observado determinadas formalidades de ley, ofende elementales principios de equidad, en el sentido civilista de la palabra, el que un municipio pueda beneficiarse de un acuerdo en las circunstancias

específicas de este caso y a la vez evadir toda responsabilidad respecto a lo convenido libremente por él.

 En resumen, estimamos prudente aclarar las normas siguientes, sin pretender agotar el catálogo de los múltiples principios que rigen el enriquecimiento sin causa:

1ª La doctrina del enriquecimiento injusto es aplicable, dentro de determinadas situaciones, a los órganos administrativos.

2ª La aplicación de la doctrina dependerá de las circunstancias específicas de cada caso. El Código Civil no agota las situaciones a las que la doctrina se extiende.

3ª La doctrina del enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del país.

4ª La doctrina es invocable, entre otras circunstancias, cuando no se han observado ciertas formalidades de ley fácilmente subsanables o susceptibles de haber sido ejecutadas con el asesoramiento debido.

En consideración a lo anterior, *se revocará la sentencia recurrida y se devolverá el caso a instancia para procedimientos ulteriores compatibles con esta opinión.*

Los Jueces Asociados Señores Díaz Cruz y Negrón García concurren en el resultado sin opinión.