Arbona Lago, Juez Ponente
*1149 TEXTO COMPLETO DE LA SENTENCIA
El 24 de julio de 1995 dictamos Resolución concediendo a las partes de epígrafe término conjunto de veinte (20) días para que, de acuerdo a lo allí intimado, mostraran causa por la cual no debíamos confirmar en parte y/o revocar en otra la sentencia recurrida. Oportunamente comparecieron al efecto y nos encontramos en posición de resolver.
ANTECEDENTES
Allá para 1989 el Gobierno Municipal de Arecibo publicó la apertura de subasta pública convocando a licitadores interesados en el arrendamiento de ciertos solares municipales para uso de estacionamiento público. Estos inmuebles se identifican como: (A) Las parcelas 3 y 3A colindando por el Norte con la Ave. Víctor Rojas; por el Sur con la calle Antonio R. Barceló; por el Este con la parcela 8A propiedad de la Logia Tanamá y; por el Oeste con la calle Nicómedes Rivera. (B) La parcela 4A colindando por el Norte con la Ave. Víctor Rojas; por el Sur con la calle Antonio R. Barceló; por el Este con la parcela 4 y calle Caridad y; por el Oeste con la parcela 4C y 4D propiedad del Hospital Dr. Susoni. (C) Dos parcelas colindantes con la Cancha Bajo Techo Francisco Padilla y el Parque Luis Rodríguez Olmo.
-Ay B-
E1 9 de mayo de 1989 se llevó a cabo la subasta sobre las parcelas 3, 3A y 4A, adjudicándose la buena pro a la firma Atlantic Midway Parking System, Inc. (en adelante "Atlantic”). El 1 de septiembre de 1989 se otorgó el contrato de arrendamiento (original) sobre tales predios, por un canon de $4,375.00 por las parcelas 3 y 3A; y $6,775.00 por la 4A. El término de vigencia de tal contrato se fijó en (2) años, contados a partir del 1 de septiembre de 1989 y hasta el 31 de agosto de 1991 (contrato 90-121).
No obstante, el 1 de octubre de 1989 y sin que mediase previa subasta se firmó otro contrato mediante el cual se enmendó el término, extendiéndolo por tres (3) años fiscales más, del 1 de noviembre de 1989 al 30 de octubre de 1992 (contrato 90-0218). Finalmente, el 1 de octubre de 1992 y sin que mediase previa subasta se otorgó un tercer contrato (contrato 93-00126), entre las mismas partes y sobre los mismos predios. En esta segunda enmienda se volvió a prorrogar el arrendamiento, sin subasta, por un término de 5 años, contados a partir del 1 de noviembre de 1992 hasta el 30 de octubre de 1997. En esta ocasión también se varió el canon pactado; el de las parcelas 3 y 3 A aumentó a $4,525.00 y el de la 4A a $6,975.00.
-C-
En cuanto a los predios colindantes con la Cancha Bajo Techo Francisco Padilla y el Parque Luis Rodríguez Olmo, se celebró subasta pública el 30 de octubre de 1990. Atlantic también obtuvo la buena pro, otorgándose el correspondiente contrato el 5 de febrero de 1991 (contrato 91-0239). El término de vigencia de este contrato se fijó en cinco (5) años, a finalizar el 4 de febrero de 1996.
Litigio ante Instancia
El 1 de febrero de 1995 el Gobierno Municipal de Arecibo presentó "Solicitud de Injunction y *1150 Sentencia Declaratoria" ante el Tribunal de Primera Instancia, Sala Superior de Arecibo. El Municipio solicitó que se declarara la nulidad de los antedichos contratos y en apoyo de tal reclamo señala ausencia de subasta en unos y de una resolución u ordenanza de la Asamblea Municipal que aprobara el otorgamiento de otros. El 13 de junio de 1995 Instancia (Hon. Edna Abruña Rodríguez, J.) dictó Sentencia declarando nulos y ultra vires todos los contratos objeto de impugnación. A tales efectos concluyó:

"El proceso seguido en el otorgamiento de los dos (2) contratos objeto de este pleito violó y transgredió abiertamente los preceptos legales anteriormente transcritos. Es decir, el contrato 93-00126 del 1ro. de octubre de 1992, se llevó a cabo sin celebrarse subasta alguna y sin la aprobación de la Asamblea Municipal. Más aún, a pesar que la génesis de dicho contrato lo era el contrato de 1ro. de octubre de 1989, que disponía en su párrafo final y citamos:

"...Este contrato no conlleva la renovación automática del mismo y en su defecto se aplicará el procedimiento de subasta instituido por ley ".[sic]

De forma similar el contrato del 5 de febrero de 1991 Número 91-0239 fue suscrito sin la aprobación de la Asamblea Municipal. Dicha aprobación es mandatoria por disposición de ley."

Apelación
De tal determinación recurrió en tiempo la apelante Atlantic. Hace tres (3) señalamientos de error, a saber:
"1. Erró el Honorable Tribunal de Instancia al declarar nulos y ultra vires los contratos y al no acoger el planteamiento del apelante a los efectos de que la Asamblea sí aprobó y ratificó tanto las enmiendas a los contratos de referencia, así como sus extensiones, salvándolos así de la nulidad alegada.

2. Erró el Honorable Tribunal de Instancia al no acoger el planteamiento de la parte apelante de epígrafe a los efectos de aplicar contra la parte apelada las doctrinas de cosa juzgada, impedimento colateral por sentencia, fraccionamiento de la causa de acción; actos propios; incuria; standing; y caducidad.

3. Erró el Honorable Tribunal de Instancia al determinar que a la parte apelada se le causó un daño irreparable, declarando Con Lugar el Injunction y Sentencia Declaratoria y declarando nulos y ultra vires los contratos, aunque no se pasó prueba sobre los requisitos de ley para que prosperaran dichos recursos."

I
Los contratos de arrendamiento aquí impugnados están regulados por dos (2) cuerpos de ley municipal distintos. El de 5 de febrero de 1991, por la hoy derogada Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980, 21 L.P.R.A. see. 2001 y ss. El de 1 de octubre de 1992 por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. see. 4001 y ss.
Tanto un estatuto como el otro, establecen como deber de la Asamblea Municipal aprobar la permuta, gravamen, arrendamiento o venta de los bienes inmuebles municipales. Ley Núm. 146, supra, Art. 4.18; Ley Núm. 81, supra, Art. 5.005.
Igualmente ambos estatutos requieren que, como regla general, medie subasta pública antes de otorgarse un contrato de arrendamiento sobre propiedad municipal. Ley Núm. 146, supra, Arts. 8.02 y 8.06; Ley Núm. 81, supra, Art..8005. La excepción a tal norma es reconocida en circunstancias donde el interés público, claramente expresado mediante resolución u ordenanza al respecto, requiera prescindir de dicho requisito. Según lo dispuesto, la resolución u ordenanza que a tales efectos se promulgue debe ser aprobada por (2/3) partes del número total de miembros de la Asamblea Municipal. Ley Núm. 146, supra, Arts. 4.16 y 8.06; Ley Núm. 81, supra, Arts. 5.006 y 10.011.
*1151 II
Apliquemos la norma reseñada a los hechos del caso que nos ocupa.
-A y B-
En lo que atañe al contrato sobre las parcelas 3, 3A y 4A, Atlantic argumenta que aquel otorgado el 1 de octubre de 1992 (tercero) es válido. En apoyo de tal contención señala que tal contrato se otorgó durante la vigencia de otro, cuya génesis a su vez, es el contrato de 1 de septiembre de 1989 (original), donde sí había dado cumplimiento al requisito de subasta pública.
El argumento anterior se aparta de su faz del propósito mismo del requisito de celebración de subasta. En el caso de los arrendamientos de propiedad municipal el propósito de la subasta es el obtener contrato con aquel licitador que cumpliendo con los criterios de adjudicación sea el postor más alto. Ley Núm. 146, supra, Art. 8.03; Ley Núm. 81, supra, Art. 11.0006. El asunto no requiere mayor atención. Queda derrotado por las propias cláusulas del contrato original, el cual en lo pertinente dispuso: "[e]ste contrato no conlleva la renovación automática del mismo y en su defecto se aplicará el procedimiento de Subasta instituido por ley."
No puede convalidarse una actuación ultra vires que arrastró el término de un contrato de dos (2) años hasta ocho (8) años. Si avaláramos tal práctica, estaríamos acuñando un subterfugio para evadir el requisito de subasta, el cual está revestido de un alto interés público por lo que su estricto cumplimiento es insoslayable. Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987) y casos allí citados. A este respecto debemos y confirmamos el dictamen de Instancia.
-C-
No obstante, la situación en cuanto al contrato suscrito el 5 de febrero de 1991 respecto a las dos parcelas municipales colindantes a la cancha Bajo Techo Francisco Padilla y Parque Luis Rodríguez Olmo es diferente. Este contrato de arrendamiento se otorgó luego de celebrada una subasta pública y desde un principio se fijó como término de duración el de cinco (5) años, vencedero el 4 de febrero de 1996. Debemos considerar y resolver si el hecho de que la Asamblea Municipal no le extendió aprobación mediante resolución u ordenanza, escrita y específica, lo hace nulo ante los hechos que esta causa informa. Entendemos que no.
Como advirtiéramos anteriormente, el Art. 4.18 de la Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146, supra, establece como uno de los deberes de la Asamblea Municipal aprobar la permuta, gravamen, arrendamiento o venta de los bienes inmuebles municipales. El articulado igualmente reconoce como un deber inherente a la Asamblea el aprobar el presupuesto general anual de ingresos y gastos del municipio.
Siendo ello así, resulta persuasivo el argumento esbozado por Atlantic al efecto de que si bien la Asamblea no aprobó mediante resolución u ordenanza expresa el referido contrato fiel a lo adjudicado en subasta pública, sí lo hizo de forma tácita. Esto es, tal requisito de aprobación quedó subsanado al incluirse en el presupuesto general del Municipio, año tras año, los ingresos generados por concepto de estos cánones de arrendamiento.
No cabe duda que de ordinario tal aprobación debe hacerse mediante resolución u ordenanza escrita. Sin embargo, en el caso particular que nos ocupa la Asamblea refrendó la acción del ejecutivo municipal (adjudicación de subasta y otorgamiento de contrato), al incluir en el presupuesto del Municipio las partidas obtenidas como canon de arrendamiento de estas dos parcelas, reiteradamente para y durante los años fiscales 1992-93, 1993-94, 1994-95. Por lo tanto, se cumplió el propósito perseguido por dicha disposición de ley, a saber, que la otra rama del gobierno municipal intervenga para así evitar la posible acción unilateral del ejecutivo como medida de peso y contrapeso en el gobierno de la cosa pública municipal.
No se trata aquí de novaciones prohibidas por la ley que inciden en cuanto al requisito de subasta y contra los propios términos claros del contrato, que prohibe la tácita reconducción.
Este aspecto del litigio contempla una subasta pública válidamente adjudicada a "Atlantic" y cuyo contrato de cinco (5) años se otorgó el 5 de febrero de 1991, a vencer en febrero de 1996. Durante el *1152 considerable tiempo transcurrido entre febrero de 1991 hasta el inicio de este pleito en Instancia, (al contrato sólo le quedan al día de hoy, unos seis (6) meses) el Municipio ha estado cobrando y presupuestando los cánones contractuales. Ante ello no puede ahora esgrimirse válidamente como escudo la falta del aval —escrito y formal— del contrato, por medio de resolución u ordenanza escrita y específica. Los hechos aquí informados, demuestran que la Asamblea reiteradamente ratificó la subasta y aprobó el contrato, al cobrar y presupuestar anualmente tales ingresos municipales.
Ante hechos municipales equivalentes a los que aquí nos ocupan se ha resuelto:

"Independientemente de la naturaleza jurídica del municipio en Puerto Rico, resulta claro que las obligaciones que contraiga se rigen por principios de Derecho civil, sujeto a estatutos que modifiquen tal situación.

Los contratos administrativos se rigen normalmente, en ausencia de régimen especial, por la teoría general de los contratos. J.-M. Auby y R. Drago, Traité de Contentieux Administratif, 2da ed., París, Librairie Générale de Droit et de Jurisprudence, 1975, T. II, pág. 480. Ello significa que la doctrina del enriquecimiento injusto, entre otras, es aplicable a determinadas situaciones en que una de las partes contratantes es un organismo público. S. de 22 de enero de 1975, núm. 8, Aranzadi, XLII Repertorio de Jurisprudencia 20; F. Garrido Falla, Tratado de Derecho Administrativo, Madrid, Centro de Estudios Constitucionales,, Vol. II, pág. 12 y ss.

Aún suponiendo, no obstante, que el acuerdo logrado sea anulable o aún nulo por razón de no haberse observado determinadas formalidades de ley, ofende elementales principios de equidad, en el sentido civilista de la palabra, el que un municipio pueda beneficiarse de un acuerdo en las circunstancias específicas de este caso y ala vez evadir toda responsabilidad respecto a lo convenido libremente por él." Plan Bienestar de Salud v. Alcalde, 114 D.P.R. 697, 699-703 (1983). Ver también doctrina de Colondres v. Bayrón Vélez, 114 D.P.R. (1983)."
III
Finalmente, en cuanto a los señalamientos de error número dos y tres, entendemos que no están sostenidos por la prueba ofrecida. En vista de ello, tampoco es menester abundar sobre la norma de derecho que los cobija.
DICTAMEN
Conforme a lo expuesto, se confirma parcialmente la Sentencia recurrida, en tanto y en cuanto se refiere al contrato de 1 de octubre de 1992, sobre las parcelas 3, 3A y 4A y revoca en cuanto ésta concierne al contrato suscrito el 5 de febrero de 1991, que vencerá el 4 de febrero de 1996, sobre los predios municipales colindantes con la Cancha Bajo Techo Francisco Padilla y el Parque Luis Rodríguez Olmo.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General