Cristy & Sánchez, por su gestor José A. Cristy, demandante y recurrente, *v.* El Estado Libre Asociado de Puerto Rico y la United States Fidelity & Guaranty, Company, demandadas y recurridas.

*Número:* 12484 *Resuelto:* 21 de diciembre de 1961.

236

*Enrique Igaravídez,* abogado del recurrente; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Luis Venegas Cortés, Procurador Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 3 de febrero de 1948, se firmó por el señor Angel (2) Silva, como Superintendente de Obras Públicas del anterior Departamento del Interior del anterior Gobierno de Puerto Rico, y por la Fongora Corporation un contrato de obra pública para la construcción de un puente sobre el río Yagüez del municipio de Mayagüez, y el día 12 de febrero de 1948 dicho contrato fue refrendado por el anterior Comisionado del Interior de Puerto Rico. La contratista Fongora Corporación, con la aprobación del Superintendente de Obras Públicas, subcontrató con la demandante recurrente Cristy & Sánchez el suministro, instalación y supervisión de todo el material eléctrico que se requería en el contrato. Las fianzas requeridas por el contrato para el fiel cumplimiento del mis-

mo y para el pago de materiales y mano de obra utilizados en la obra fueron prestadas por la codemandada United States Fidelity and Guaranty Company. Es un hecho estipulado que los otros contratos envueltos en esta cuestión litigiosa son idénticos al aquí descrito.

La subcontratista cumplió a cabalidad con el subcontrato suministrando los materiales y la mano de obra y supervisando la instalación del sistema eléctrico. Al no recibir el pago de su trabajo por haber quebrado la contratista, demandó judicialmente dicho pago del Estado Libre Asociado de Puerto Rico, sucesor en derecho del anterior Gobierno de Puerto Rico y de la compañía fiadora. El Estado alegó (1) que por no haber sido parte en el contrato entre la subcontratista y la contratista no estaba obligado a pagar y (2) que en el supuesto que la subcontratista tuviera una causa de acción contra el Estado, por haber surgido la misma, con anterioridad a la Ley número 104 de junio de 1955, autorizando reclamaciones y demandas contra el Estado, éste no había dado su consentimiento para ser demandado. La compañía fiadora, por su parte alegó (3) que las fianzas habían sido expedidas a favor del Estado y no de subcontratistas u otras personas, y por lo tanto, no tenía que responder del pago de los materiales eléctricos y la mano de obra reclamados por la subcontratista. La ilustrada Sala sentenciadora estuvo conforme con las objeciones a la razón de pedir aducidas por ambos damandados y desestimó sumariamente la demanda.

1—En el contrato firmado se reconoció el derecho del contratista a subcontratar o a ceder parte del contrato: Véase el renglón 19(b), (pág. 9), el apartado IV (pág.15) y el apartado VI (pág.19) de las especificaciones; el renglón 1.22 (pág. 4) el renglón 8.1 (pág. 31) y el renglón 8.4 (pág. 34) del Pliego de Condiciones Generales para la Construcción de Obras Públicas. Tanto el pliego de especificaciones como el pliego de Condiciones Generales autorizan el subcontrato o cesión, después de ser aprobado por el Superintendente de

Obras Públicas, y el subcontratista queda obligado a realizar su parte de la obra con la misma pericia y dentro de las mismas condiciones impuestas al contratista—renglón 8.1 (pág. 31), anteriormente acotado. ■

2—No debemos detenernos a considerar la posible inmunidad del Estado en esta clase de acciones. Como cuestión de realidad, el Estado aquí resulta una parte instrumental debido al carácter subsidiario de la fianza. Casualmente, estas fianzas se exigen para librar al Estado de cualquier reclamación directa por la falta de pago de los materiales o la mano de obra. En cuanto a la responsabilidad del Estado por los contratos firmados por las corporaciones públicas, véase *Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U. S. 381, 83 L. ed. 784 (Frankfurter) (1939) cita precisa a las págs. 388–392 U. S. 788–790 L. ed.

3—En cada contrato de obra pública que se firma en Puerto Rico, se le requiere al contratista afianzar el fiel cumplimiento del contrato de construcción (*performance bond*) y el pago de los materiales y mano de obra que el contratista acopia o emplee en la construcción (*labor and material bond*). De esta manera, el Estado se asegura del abandono de cualquier obra pública por parte del contratista, y según hemos dicho anteriomente, de las reclamaciones contra el Estado por los materiales y mano de obra que deje en descubierto el contratista: Véase renglón 1.5 (pág.1) renglón 1.14 (pág.3) y renglón 3.4 (pág. 9) del pliego de Condiciones Generales. ■

El pliego de Condiciones Generales para la contratación de Obras Públicas Insulares, adoptado el 14 de marzo de 1946, exige la prestación de una fianza para "el pronto pago de toda mano de obra (labor) equipo y materiales que se necesiten para la ejecución de la obra". Tanto el pliego de Condiciones Generales como la fianza forman parte del contrato de obra pública—art. 426 del Código Político de Puerto Rico y renglón 1.5 (pág.1) del pliego de Condiciones Generales.

Como cuestión de hecho ambos documentos estan incluidos en el contrato bajo estudio. ▮▮▮▮

La fianza prestada en un contrato de obra pública en Puerto Rico participa de la naturaleza de una fianza prestada de acuerdo con las disposiciones de una Ley—en este caso el Pliego de Condiciones Generales— (*statutory bond*) y de una fianza otorgada de acuerdo con los términos de un contrato (*contract bond*). Siendo esto así la descripción de las partes realmente garantizadas hay que buscarla tanto en la disposición estatutaria y los términos del contrato como en el documento de fianza, pues todos juntos forman un solo cuerpo obligacional: 43 American Jurisprudence págs. 891, primer párrafo y 892 primer párrafo, secciones 148 y 149. En realidad de derecho, la fianza no se presta a favor del Estado sino a favor de los proveedores de materiales y mano de obra. 43 American Jurisprudence 893, primer párrafo, Sección 155. En casos de pólizas requeridas en virtud de disposición estatutaria, el estatuto se considera como que forma parte de la misma: *González* v. *Santos*, 75 D.P.R. 940 (Ortiz) (1954) cita precisa a las págs. 942 y 943; *U. S. Casualty Co.* v. *Tribunal Superior*, 79 D.P.R. 852 (Pérez Pimentel) (1957) cita precisa a la pág. 858; igual principio prevalece en cuanto a las fianzas. No es necesario, pues, que en el documento de fianza, se especifiquen todas y cada una de las personas garantizadas por la misma, ya que dichas personas están debidamente descritas en las disposiciones de ley aplicables o en los términos del contrato garantizado: 43 American Jurisprudence pág. 896, sección 155.

Debemos ser justos con la ilustrada Sala sentenciadora y aceptar que su conclusión, en el sentido, que no existe relación contractual entre los fiadores y los proveedores de materiales y mano de obra, descansa en nuestras anteriores decisiones en los casos de *Municipio de Fajardo et al* v. *Axtmayer et al*, 31 D.P.R. 823 (1923), *Morales* v. *Chabert*, 43 D.P.R. 119, (1932), *Battle* v. *Pereyó*, 67 D.P.R. 662 (1947) y en

nuestra sentencia de fecha 21 de diciembre de 1953 en el caso de *El Pueblo de Puerto Rico*, hoy *Estado Libre Asociado de Puerto Rico*, demandante y apelante v. *United States Fidelity & Guaranty Company*, Demandada y apelada, Civil Número 10,845.

En el caso de *Municipio de Fajardo* v. *Axtmayer* se trataba de un contrato firmado entre el Comisionado de lo Interior y el Sr. Axtmayer para la construcción de un edificio público. El contrato contenía una fianza a favor del Comisionado de lo Interior, parecida a la que estamos estudiando. Parece que el Municipio de Fajardo demandó al Sr. Axtmayer y a los fiadores para obtener el pago de ciertos materiales vendidos por J. Ochoa & Hermanos que se usaron en la obra. Se resolvió que no había relación contractual alguna entre los fiadores y J. Ochoa Hermanos, (pág. 828). La única autoridad citada es una opinión del Procurador General de Puerto Rico que hace referencia a un caso resuelto por la Corte Suprema de Filipinas.

En el caso de *Morales* v. *Chaberts* el contratista Sr. Chabert celebró un contrato de obra pública con el Municipio de Carolina, otorgando en unión de otras dos personas una fianza a favor del Municipio en la cual se consignó que pagaría prontamente a las personas que le suministrasen materiales y mano de obra. El Sr. Morales demandó al contratista Sr. Chabert y a sus fiadores para que le pagasen el valor de ciertos materiales suministrados al contratista para dicha obra. Aplicando el caso de *Municipio de Fajardo* v. *Axtmayer* se resolvió que en una fianza a favor de un municipio no puede interpretarse como una estipulación *pour autrui* y que la falta de palabras adecuadas que expresaran que la fianza se otorgaba también en favor de los que habían de suministrar los materiales, demostraba que no había intención clara por parte de los contratantes de estipular en favor de los que suministraran los materiales; que de acuerdo con el Código Civil nuestro la fianza debe ser expresa y no debe

extenderse a más de lo contenido en ella; que la cuestión se regía por el Código Civil y no por el Código Político, pues en éste "no se dice que los que suministren materiales o trabajo para las obras públicas tendrán derecho a cobrar de los fiadores" (págs. 121 y 122). El Juez Asociado señor Hutchison disintió.

En el caso de *Battle* v. *Pereyó*, el contratista Sr. José Pereyó celebró un contrato con el Departamento de lo Interior para la construcción de una obra pública y junto con los señores Juan Torrellas y Luis Pereyó prestó una fianza a favor de El Pueblo de Puerto Rico. El contratista Sr. Pereyó celebró otro contrato con el demandante Sr. Horacio Battle para que éste le suministrara la piedra, la grava y la arena que se necesitase en la construcción de la obra, quedando a deberle por tales materiales cierta cantidad de dinero. El Sr. Battle demandó al contratista y a sus fiadores. La corte dictó sentencia contra el Sr. Pereyó y exoneró del pago a los fiadores.

Los fundamentos para denegar el recurso contra los fiadores fueron los siguientes: (1) en Puerto Rico la fianza no se presume, debe ser expresa y no puede extenderse a más de lo contenido en ella, siendo de interpretación restrictiva, (pág. 665) (2) que el hecho de no haberse incluido a los proveedores de materiales en la Ley número 31 de 23 de abril de 1931, dándole una acción directa a los obreros y empleados contra el contratista y sus fiadores, demostraba la intención legislativa de considerar a dichos proveedores como personas extrañas al contrato de obra pública (pág. 666). La sentencia de fecha 21 de diciembre de 1953 en el caso de *El Pueblo de Puerto Rico*, hoy *Estado Libre Asociado de Puerto Rico* v. *United States Fidelity & Guaranty Company* no aduce otros fundamentos que una mera referencia al caso de *Battle* v. *Pereyó*.

Resumiendo: Nuestra anterior jurisprudencia dejó establecido, considerando aisladamente el documento de fianza,

que no existía relación contractual alguna entre los fiadores y los proveedores de materiales y mano de obra—caso de *Municipio de Fajardo* v. *Axtmayer*—por falta de palabras adecuadas en el documento de fianza que expresaran que la fianza se otorgaba también en favor de los proveedores de materiales y mano de obra y considerando la relación de la fianza con las disposiciones legales vigentes sobre el contrato de obra pública, se resuelve que, como en el Código Político de Puerto Rico, no se especificaba que los que suministrasen materiales o trabajo para las obras públicas tendrían derecho a cobrar de las fianzas, los fiadores no eran responsables–caso de *Morales* v. *Chabert*–; que por no haberse incluido a los proveedores de materiales en la Ley número 31 de 23 de abril de 1931, tal parecía que la intención legislativa era excluirlos de la garantía, máxime cuando de acuerdo con el Código Civil de Puerto Rico, la fianza debe ser expresa–caso de *Battle* v. *Pereyó*. ■

Es bueno dejar aclarado que las fianzas estudiadas en estos tres casos, son todas anteriores a la promulgación del Pliego de Condiciones Generales de 14 de marzo de 1946, y hay que suponer, que en ninguno de dichos tres casos se consideró el Pliego de Condiciones Generales que regía cuando se firmó el contrato, objeto de esta acción. No nos detendremos a considerar si el anterior pliego de Condiciones Generales decretado por el Gobierno de España el 11 de junio de 1886 o cualquier otro posterior, ha podido ser una fuente legislativa apropiada para la resolución de los anteriores casos. Pero desde el 1946 en adelante hay que considerar dicho Pliego de Condiciones Generales como un estatuto que regula el contrato de obra pública por ser una reglamentación administrativa preparada por un funcionario competente en virtud de una delegación legislativa expresa–art. 426 del Código Político de Puerto Rico. También resulta evidente que en los tres casos anteriores, no se estudió la necesidad de considerar

conjuntamente los textos de las fianzas con los términos de los contratos. ■

De manera, pues, que considerados conjuntamente el documento de fianza, el Pliego de Condiciones Generales y el contrato de obra pública, no puede haber duda que existe una relación contractual entre la compañía fiadora y los proveedores de materiales de construcción y mano de obra, incluyéndose entre éstos, cualquier subcontratista aceptado por el Superintendente de Obras Públicas. En términos generales, puede decirse que cuando en un contrato de obra pública se le permite al contratista, ceder o subcontratar parte de la obra, el subcontratista puede recobrar de la fianza prestada a favor del Estado, el precio de los materiales y el pago de la mano de obra que haya utilizado y empleado en la construcción de la parte de la obra a él encomendada: 43 American Jurisprudence 894, sección 152; 118 A.L.R. 81; 77 A.L.R. 148. Si bien en el Código Político nuestro no se dice que la fianza responderá del pago de los materiales y mano de obra, tal disposición consta en el Pliego de Condiciones Generales, promulgado por autorización del propio Código para cubrir la situación específica del contrato de obra pública y como tal goza de la categoría de una disposición especial ante nuestra legislación civil. Sabido es que en materias que se rijan por leyes especiales, sólo las deficiencias de éstas pueden suplirse por las disposiciones civiles–art. 12 del Código Civil de Puerto Rico 31 L.P.R.A. sec. 12.

Es indudable que la inclusión en las disposiciones de una reglamentación especial o en el contenido de un contrato de ciertas garantías en favor de personas inominadas, cuyos nombres no se conocen cuando se firma el contrato, no cae dentro de las deficiencias que deben suplirse por el Código Civil. Por eso no se puede aplicar a esta clase de garantía el principio civil que la fianza debe ser expresa. Se trata de una situación especial cubierta por una reglamentación

especial que tiene fuerza de ley entre las partes. Por igual razón no cabe, en una situación como ésta, la interpretación restrictiva de la fianza. ▆

La interpretación restrictiva tuvo su auge en el tiempo en que los fiadores personales, por un mero acto de liberalidad, afianzaban el contrato de obra pública, pero perdió su popularidad con el advenimiento de las compañías fiadoras que se dedican al negocio de prestar fianza mediante el pago de primas. En cuanto a la fianza de una obra pública se refiere, puede decirse, que contrario a lo que generalmente se supone, la interpretación liberal o inclusiva es la que prevalece—43 American Jurisprudence págs. 890–892, secciones 148 y 149; 77 A.L.R. 42–mientras la obligación de pagar se mantenga dentro de los límites del contrato, o sea, que no cubra materiales o mano de obra que no fueran necesarios o no se utilizaran directamente en la obra. ▆

Después de fallado el caso de *Cámara Insular etc.* v. *M. Anadón*, 83 D.P.R. 374 (Blanco Lugo) (1961), cita precisa a la pág. 380 no surge liberación de clase alguna a favor de la compañía aseguradora por el hecho de haber quebrado la contratista. Aunque la contratista quede liberada de responsabilidad por el procedimiento de quiebra, no queda liberada la compañía fiadora.

Por las razones expuestas, los casos de *Municipio de Fajardo* v. *Axtmayer et al*, 31 D.P.R. 823 (1923); *Morales* v. *Chabert*, 43 D.P.R. 119 (1932); *Battle* v. *Pereyó*, 67 D.P.R. 662 (1947) y *Estado Libre Asociado de Puerto Rico* v. *United States Fidelity & Guaranty Company* quedan expresamente revocados en todo aquello que resulte contrario a los fundamentos de esta opinión. *Debe revocarse, asimismo, la sentencia sumaria dictada el 14 de marzo de 1957 por el Tribunal Superior de Puerto Rico, Sala de San Juan y devolverse el caso para ulteriores procedimientos no incompatibles con los términos de esta opinión.*