Segarra Olivero, Juez Ponente
*714 TEXTO COMPLETO DE LA SENTENCIA
Leafar Construction Inc. apela de una sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 24 de abril de 1995 mediante la cual se desestimó la demanda instada por ésta, y, a su vez, se le ordenó la devolución al Municipio de Ponce de la suma de $140,726.79, más costas y $2,000 en concepto de honorarios de abogado.
La parte apelante, Leafar, alega que erró el tribunal recurrido al concluir que los contratos objeto del presente litigio eran nulos y al no aplicar la doctrina del enriquecimiento injusto.
Por los fundamentos que más adelante expondremos, este Tribunal entiende que le asiste la razón a la parte apelante, por tanto, se revoca la sentencia dictada por el tribunal a quo, y se declara con lugar la demanda presentada por Leafar Construction, Inc.
I
No existe controversia sobre los hechos que dieron margen a la presentación de este recurso; así lo expone tanto el tribunal a quo en su sentencia sumaria como las partes en sus respectivos escritos. 
Para finales de 1991 y principios de 1992, el Municipio Autónomo de Ponce (en adelante el "Municipio") se propuso llevar a cabo dos proyectos de construcción en dicha ciudad; a saber, la reforestación de la Avenida Las Américas y la demolición de una estructura ubicada en el Parque Paquito Montaner.
El Municipio celebró dos subastas para adjudicar la buena pro en ambos proyectos, según lo requiere el Artículo 11.001 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4501. Leafar Construction Inc. (en adelante "Leafar") compareció como licitador a las subastas de ambos proyectos, los cuales le fueron adjudicados por haber sido el postor más bajo. Para poder licitar en dicha subasta Leafar tramitó de buena fe, una fianza de licitación ("bid bond"), a través del corredor de seguros Víctor Merced, quien tenía oficinas en San Juan, Puerto Rico y era representante de la compañía The Continental Insurance Company.
Posteriormente y con motivo de la adjudicación a Leafar de la buena pro en ambos proyectos de construcción, ésta procedió a cumplir con los requisitos exigidos por el Municipio para el otorgamiento de los contratos correspondientes. Como parte de estos requisitos, Leafar tramitó y pago las primas correspondientes respecto a las fianzas de pago y cumplimiento ("Payment and Performance Bonds"), a través del mismo agente de seguros, William Merced, quien produjo las fianzas, las cuales fueron entregadas al Municipio de Ponce. Habiéndose cumplido satisfactoriamente con las exigencias del Municipio, el 17 de diciembre de 1991, las partes suscribieron el contrato relacionado con la reforestación de la Avenida Las Américas, en el cual se acordó que el contratista ejecutaría los trabajos en un término no mayor de cuatro meses a partir de la firma del contrato. Posteriormente, el 5 de marzo de 1992, se firmó el contrato relacionado con la demolición de la estructura ubicada en el estadio Paquito Montaner, el cual sería terminado en un término no *715 mayor de tres meses.
Luego de otorgados estos contratos, Leafar procedió a ejecutar las obras contratadas, cumpliendo con todas las especificaciones requeridas por el Municipio. El proyecto de reforestación de la Avenida Las Américas tenía un precio total de $367,124.33, de los cuales la parte demandante recibió la suma de $140,726.58, en dos abonos parciales durante la ejecución de la obra. El proyecto de demolición en el Parque Paquito Montaner tenía un precio de $178,175.71, de los cuales Leafar no recibió pago alguno.
Así las cosas, el 15 de mayo de 1992, la Oficina del Comisionado de Seguros emitió una certificación en la cual establecía que The Continental Insurance Co., Ltd., no estaba autorizada por dicha oficina para contratar seguros de clase alguna en Puerto Rico. El 20 de mayo de 1992, el Municipio le envió una comunicación a Leafar solicitándole la paralización inmediata de las obras "pues se ha detectado que la adjudicación de la buena pro que se hizo a su favor en esos proyectos está viciada de nulidad provocada por la sumisión, por su parte de unas fianzas de licitación ("bid bonds") y de las fianzas de cumplimiento y pago ("payment and performance bonds") inválidas en derecho”. 
El hallazgo sobre la invalidez de tales fianzas sorprendió a la parte demandante, quien en todo momento presumía que las mismas eran válidas. Leafar le reclamó inmediatamente a su corredor de seguros al respecto e instó una querella contra éste en la Oficina del Comisionado de Seguros. Posteriormente, el 4 de noviembre de 1992, Leafar radicó una demanda contra el corredor por los daños y perjuicios sufridos como consecuencia de este incidente.
Los proyectos de construcción fueron terminados totalmente y aceptados por el Municipio. A pesar de ello, el Municipio se negó a pagar la suma que le adeudaba a Leafar, la cual ascendía a un total de $404,573.46, alegando que la irregularidad habida en las fianzas prestadas por Leafar tuvo la consecuencia de hacer nulos los contratos otorgados por las partes.
El 15 de julio de 1994, Leafar instó una solicitud de sentencia declaratoria y cobro de dinero ante el Tribunal de Primera Instancia, Sala Superior de Ponce, requiriéndole al tribunal que estableciera que, a pesar de la irregularidad habida en las fianzas presentadas por Leafar al Municipio, éste debía pagar el precio pactado por obras, toda vez que éstas habían sido ejecutadas satisfactoriamente. Alegó Leafar que ante los hechos de este caso, era de aplicación la doctrina del enriquecimiento injusto.
El 22 de octubre de 1994, el Municipio contestó la demanda y presentó reconvención contra Leafar solicitando la devolución de los abonos ya pagados -suma que ascendía a $140,726.79— debido a la nulidad de los contratos otorgados por las partes. Alegó además que la doctrina del enriquecimiento injusto no era aplicable al caso por haberse violado claros mandatos de ley y de política pública.
Leafar procedió a solicitar sentencia sumaria a su favor. El Municipio se opuso y a su vez solicitó que se dictara sentencia sumaria a su favor para declarar con lugar la reconvención presentada.
El 24 de abril de 1995, el Tribunal de Primera Instancia, Sala Superior de Ponce, dictó la sentencia que nos ocupa declarando "Ha Lugar" la reconvención presentada por el Municipio, y como consecuencia de ello, ordenó a Leafar a devolverle al Municipio la suma de $140,726.79, costas y honorarios de abogado. El tribunal recurrido expuso en su sentencia que:

"Este Tribunal resuelve que como cuestión de tyecho y de derecho que el contrato de obras otorgado por el Municipio Autonómo de Ponce y Leafar Construction, Inc., es uno nulo a tenor con el Artículo 8.016 de la Ley de los Municipios Autónomos del Estado Libre Asociado de Puerto Rico, 21 L.P.R.A. 4366, y lo resuelto en el caso de Cancel v. Municipio de San Juan, [101 D.P.R. 296„ 300 (1973)]; resuelve, además, que no aplica la doctrina en equidad del enriquecimiento injusto por haber sido violado un principio fundamental de política pública."

Leafar radicó en tiempo una moción de determinaciones adicionales de hechos y conclusiones de derecho, la *716 cual fue denegada. Posteriormente, Leafar acude ante nos mediante el presente escrito de apelación en el que nos solicita revoquemos la sentencia dictada alegando la comisión de dos errores, a saber:

"A. Erró el Honorable Tribunal de Primera Instancia al determinar que los contratos entre las partes eran nulos.

B. Erró el Honorable Tribunal de Primera Instancia al concluir que no era de aplicación la doctrina de enriquecimiento injusto".

El municipio presentó su alegato. Este Tribunal señaló vista oral para el 23 de febrero de 1996. Ambas partes comparecieron. Estamos en posición de resolver.
n
La adecuada adjudicación de la controversia que se nos plantea requiere que hagamos un delicado balance entre dos intereses fundamentales que pernean nuestro ordenamiento jurídico: por un lado, mantener una sana administración pública y, por el otro, impedir que una parte obtenga beneficios injustificados y exhorbitantes a expensas de otra que ha cumplido fielmente sus prestaciones y que encararía efectos catastróficos en sus haberes.
De entrada reiteramos que los preceptos legales que rigen las reclamaciones económicas entre entidades privadas y los municipios, están revestidos de un gran interés público y aspiran a promover una sana y recta administración pública. Hatton v. Municipio de Ponce, _ D.P.R. _ (1994), 94 J.T.S. 2. Examinemos las normas atinentes contenidas en la Ley Núm. 81 del 30 de agosto de 1991, 21 L.P.R.A. see. 4001 y ss, conocida comúnmente como la "Ley de Municipios Autónomos".
El Artículo 11.001 de la Ley, 21 L.P.R.A. see. 4501, preceptúa que el municipio cumplirá con el procedimiento de subasta pública, cuando se trate, entre otras cosas, de toda obra de construcción o mejora pública por contrato que exceda de cuarenta mil (40,000) dólares.
El Artículo 11.006,21 L.P.R.A. see. 4506, dispone que:

"La Junta de Subastas entenderá y adjudicara todas la subastas que se requieran por ley, ordenanza o reglamento..."

(c) Garantías y Fianzas. La Junta requerirá al licitador las garantías que estime necesarias a fin de asegurar el cumplimiento del contrato de compra y podrá fijar los demás términos de dicho contrato, que a su juicio, considere necesarios, convenientes o útiles.

En casos de obras y mejoras públicas el contratista antes de firmar el acuerdo correspondiente, además de lo requerido en la sección 4366 de este título, someterá o prestará las fianzas y garantías que le requiera la Junta para asegurar el fiel cumplimiento del contrato.

Asimismo la Junta podrá fijar el monto de lafianza provisional para asegurar la participación del licitador en la subasta." (Subrayado nuestro).
Por otro lado, el Artículo 8.016,21 L.P.R.A. 4366, dispone que:

"Todo contrato que se ejecute en contravención a lo dispuesto en esta sección sera nulo y sin efecto. Si se han invertido fondos públicos, su importe podrá recobrarse a nombre del municipio mediante la acción adecuada incoada a tal propósito..."

(c) Los contratos para la ejecución de obras y mejoras públicas no se suscribirán hasta tanto:

(1) El contratista evidencie ante el municipio el pago de la póliza correspondiente del Fondo del Seguro del

*717
Estado y de la correspondiente patente municipal;

(2) haga entrega de la fianza prestada para garantizar el pago de jornales y materiales que se utilicen en la obra, y

(3) entregue o deposite cualquier otra garantía que le sea requerida por la Junta de Subastas.

(d) Todo contrato de construcción de obra o de mejora pública proveerá para la retención de un diez por ciento (10%) de cada pago parcial, hasta que se termine la obra, ésta sea inspeccionada y aceptada por el municipio y hasta tanto el contratista evidencie que ha sido relevado de toda obligación como patrono.

Los municipios mantendrán un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las sees. 97 et seq. del Título 2 y su Reglamento." (Subrayado Nuestro).
El Artículo 8.004, 21 L.P.R.A. see. 4354, dispone que las obligaciones y desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas.
En cada contrato de obra pública que se firma en Puerto Rico, se le requiere al contratista afianzar el fiel cumplimiento del contrato de construcción (performance bond) y el pago de los materiales y mano de obra que el contratista acopie o emplee en la construcción (labor and material bond). De esta manera el Estado asegura los daños que pudiera inferirle el abandono de cualquier obra pública por parte del contratista, y se libera de cualquier reclamación directa por falta de pago de los materiales o de la mano de obra. Cristy & Sánchez v. E.L.A., 84 D.P.R. 234, 238 (1961).
Las diversas disposiciones estatutarias que regulan la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, la extravagancia, el descuido, el favoritismo y los riesgos del incumplimiento. Hatton v. Municipio de Ponce, supra. La fianza es el broche final de seguridad que preserva la cadena de pasos previos en una honesta y eficiente administración del negocio público. Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973).
En Cancel v. Municipio de San Juan, supra, el Municipio celebró una subasta y adjudicó la buena pro al licitador-demandante, advirtiéndole que de no cumplir con ciertos requisitos el Municipio se reservaba el derecho a dejar sin efecto la adjudicación de la subasta. El licitador incumplió con los requisitos debido a que la fianza presentada no era aceptable, toda vez que le concedía libre opción a la compañía fiadora para cancelar unilateralmente la fianza con sólo dar aviso al Municipio. El Municipio dejó sin efecto la adjudicación de la subasta y el licitador solicitó un injunction. El tribunal a quo desestimó esta solicitud. El Tribunal Supremo resolvió que el contrato entre el licitador y el municipio nunca se perfeccionó y, por ello, no tenía que entrar a discutir la cuestión de si procedía o no la resolución del mismo y que el Municipio estaba facultado para revocar la adjudicación de la subasta antes de que se formalizara el contrato correspondiente. El Tribunal no acogió la posición del licitador en cuanto a que el defecto de la fianza no era sustancial y, por tanto, el vínculo contractual era válido. A manera de dictum, el Tribunal expresó que:

"Aun cuando inadvertidamente el Municipio de San Juan hubiese llegado a la etapa final del otorgamiento del contrato escrito estaría en tiempo para repudiarlo; el mismo sería uno nati-muerto pues el error de aceptar una fianza ineficaz equivale a dispensar el requisito de fianza, vicio fatal del consentimiento reconocido en el Artículo 1218 del Código Civil (31 L.P.R.A. see. 3405) cuando el error gravita sobre una condición que principalmente movió a las partes hacia la celebración del contrato".

A tenor con lo antes expuesto, podemos colegir que los acuerdos otorgados entre el Municipio de Ponce y Leafar Construction, Inc. son nulos por adolecer del requisito relativo a las fianzas de licitación y de pago y *718 cumplimiento, toda vez que éstas resultaron ser ineficaces luego de haberse otorgado los contratos en cuestión. Aunque en la situación de autos Leafar de buena fe tramitó y entregó las respectivas fianzas al Municipio al momento de suscribirse los contratos, —que es lo que requiere el Artículo 8.016 de la ley de Municipios Autónomos, supra — , y el Municipio las aceptó creyendo también que eran válidas, procede que decretemos la nulidad de los contratos. Ello es así debido a la importancia que reviste la fianza dentro del esquema de la administración del negocio público. Además, es nuestro deber considerar y acoger los pronunciamientos emitidos por nuestro Tribunal Supremo en Cancel v. Municipio, supra, al efecto de que aun cuando inadvertidamente el Municipio hubiese aceptado una fianza ineficaz en la etapa del otorgamiento del contrato, el Municipio estaría en tiempo para repudiarlo puesto que tal error equivale a dispensar el requisito de fianza. Estas expresiones de nuestro más alto foro nos indican que el curso decisorio a seguir en este caso debe ser cónsono con los principios antes esbozados.
No obstante, lo anteriormente expuesto no dispone totalmente de la controversia que tenemos ante nuestra consideración. Debemos examinar a continuación la doctrina del enriquecimiento injusto, de manera que podamos adjudicar la cuestión de si procede o no su aplicación a la luz de las circunstancias particulares que presenta el caso de autos.
ni
La doctrina del enriquecimiento injusto es "un principio general de derecho que puede aplicarse a situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: el que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro. Se trata de una doctrina general basada en la equidad, reconocida por el derecho en todos los países civilizados, que domina muchas relaciones de derecho privado y que cada día dominará más, susceptible de aplicación en múltiples casos que son muy difíciles de prever". Silva v. Comisión Industrial, 91 D.P.R. 891, 897-98 (1965). (Citas omitidas.) El principio jurídico del enriquecimiento sin causa en el Derecho Civil tiene sus límites. No puede invocarlo el gestor de mala fe, ni surte efecto en situaciones en que su aplicación violentaría un criterio de política pública. Plan Bienestar Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (700) (1983). La doctrina sobre enriquecimiento injusto es una en equidad que únicamente puede ser invocada cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente. Puig Brutau, Fundamentos de Derecho Civil, T. II, Vol. Ill, p. 44., Bosch, Barcelona, 1983.
Los requisitos que deben estar presentes para que sea de aplicación la doctrina del enriquecimiento injusto son los siguientes: (1) existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) la conexión entre empobrecimiento y enriquecimiento; (4) falta de causa que justifique el enriquecimiento; y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. Hatton v. Municipio de Ponce, _ D.P.R. _ (1994), 94 J.T.S. 2; Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 823 (1988). En Plan Bienestar Salud v. Alcalde Cabo Rojo, supra, el Tribunal Supremo señaló los límites de esta doctrina:

"1. La doctrina del enriquecimiento injusto es aplicable, dentro de determinadas situaciones, a los órganos administrativos.

2.La aplicación de la doctrina dependerá de las circunstancias específicas de cada caso. El Código Civil no agota las situaciones a las que la doctrina se extiende.

3.La doctrina del enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio importante de orden público encamado en la Constitución o las leyes del país.

4.La doctrina es invocable, entre otras circunstancias, cuando no se han observado ciertas formalidades de ley fácilmente subsanables o susceptibles de haber sido ejecutadas con el asesoramiento debido."

Nuestro Tribunal Supremo ha resuelto en múltiples ocasiones que la doctrina de enriquecimiento injusto es inaplicable cuando resulta contraria a una clara política pública plasmada en un estatuto o la Constitución, o *719 cuando el empobrecimiento es imputable al propio reclamante. Hatton v. Municipio de Ponce, supra, a la pág. 11432; Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 696 (1987).
Conviene hacer un recuento de algunas situaciones en las que el Tribunal Supremo ha analizado si es de aplicación la doctrina del enriquecimiento injusto en los casos que envuelven contratos efectuados entre un municipio y una entidad privada. Veamos.
En Tomasini v. Municipio de Ponce, 50 D.P.R. 804 (1936), un empresario contrató con el Municipio y llevó a cabo una construcción sin que el alcalde cumpliese con el requisito estatutario de celebrar una subasta. El Tribunal Supremo desestimó la demanda debido a que las actuaciones del alcalde fueron ultra vires y resolvió que del contrato no podía surgir una responsabilidad implícita por los beneficios recibidos. En otros casos, el Tribunal ha rehusado conceder resarcimiento cuando se ha otorgado un contrato sin que se hubiese consignado en el presupuesto municipal partida alguna para atender el gasto correspondiente, lo que constituye una abierta violación a lo establecido por ley. De la Cruz v. Gobierno de la Capital, 68 D.P.R. 534 (1948); Gayá v. Gobierno de la Capital, 68 D.P.R. 281 (1948); González v. Municipio, 61 D.P.R. 369 (1943); San Miguel Etc., & Cía v. Municipio, 72 D.P.R. 391 (1951); Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987).
En Morales v. Municipio de Toa Baja, supra, los demandantes-contratistas demandaron al Municipio para reclamar el pago de cierta suma de dinero que se les adeudaba por concepto de unas obras realizadas y aceptadas por el Municipio, en virtud de varios contratos verbales acordados entre la parte demandante y el anterior Alcalde. En adición a dicha ilegalidad, los acuerdos adolecían de serias fallas que incumplían crasamente los requisitos estatutarios, entre las que se destacan las siguientes: el Municipio no elevó a escrito el contrato, ni se llevó correctamente el sistema de contabilidad, ni se notificaron los contratos al Contralor de Puerto Rico, ni había partida presupuestaria asignada para cubrir dichos contratos. El tribunal determinó que las actuaciones del Alcalde fueron ultra vires, que los contratos eran nulos por lo que no podían tener efecto a favor del contratista. Además, dispuso que no eran de aplicación las doctrinas del enriquecimiento injusto, actos propios, e impedimento en equidad pues se violaría la política pública de la Ley Municipal. Véase, además, Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37 (1988).
En Hatton v. Municipio de Ponce, supra, la parte demandante-recurrida (Hatton) demandó al Municipio de Ponce por incumplimiento de contrato, en relación con la obtención de equipo y materiales médico-quirúrgicos para un Centro de Diagnóstico y Tratamiento, para la cual no se celebró subasta. El Tribunal Supremo revocó la sentencia recurrida al resolver que el contrato era nulo y que no aplicaba la doctrina de enriquecimiento injusto debido a que los acuerdos entre Hatton y el Municipio de Ponce se efectuaron en abierta violación de todas las normas de orden público atinentes a la contratación entre gobiernos y entidades privadas.
Como hemos podido observar, en los casos arriba citados ha estado presente una clara y manifiesta violación de la política pública y de estatutos especiales que tienen como fin la protección del orden público. En estos casos, ha dicho nuestro más alto foro, la aplicación de los principios de equidad, entre los cuales se encuentra el enriquecimiento injusto, propiciaría una clara violación a la política pública y a los principios que pernean tanto la extinta Ley Municipal como la actual Ley de Municipios Autónomos, supra.
No empece lo anterior, el Tribunal Supremo ha resuelto en otros casos que los principios de equidad y de enriquecimiento injusto son aplicables contra el Estado. A manera de ejemplo, podemos mencionar que se han aplicado las doctrinas de actos propios, impedimento en equidad y buena fe contra el Estado: (a) para evitar que un contribuyente tuviera que pagar intereses sobre una deuda cuyo pago oportuno al Departamento de Hacienda había realizado, Carazo v. Secretario de Hacienda, 118 D.P.R. 306, 317-318; (b) para proteger los derechos de los demandantes en una acción de daños y perjuicios en que el Estado incurrió en mala fe al ocultar la identidad de la empresa encargada del Hospital donde ocurrieron los hechos objeto de la controversia, Berrios v. U.P.R., 116 D.P.R. 88 (1985); (c) para proteger un demandante que había demandado al Negociado de la Lotería por instrucciones de esa agencia, en vez de demandar al Estado Libre Asociado y de emplazar al Secretario de Justicia, como era menester. García Colón v. Srio. de Hacienda, 99 D.P.R. 779 (1971).
De singular importancia para resolver la controversia ante nos, resulta ser el caso de Plan Bienestar Salud v. *720 Alcalde Cabo Rojo, supra, en el cual el Tribunal aplicó la doctrina del enriquecimiento injusto en contra del Municipio de Cabo Rojo. En este caso el Municipio se comprometió a pagarle a la entidad demandante una suma mensual por concepto de plan médico de los empleados de limpieza. El Municipio no pagó lo que le correspondía. El Plan de Salud demandó al Municipio para el cobro de dicha deuda. El Alcalde solicitó sentencia sumaria, entre otras razones, porque la orden administrativa firmada por él constituyó un acto nulo, ultra vires, ya que ni él ni el municipio podían acordar un convenio colectivo con asociación alguna de empleados. El tribunal a quo decretó que procedía la sentencia sumaria.
El Tribunal Supremo revocó y sostuvo que en la situación particular de dicho caso era de aplicación la doctrina del enriquecimiento injusto. El Tribunal distinguió este caso de los anteriormente mencionados por entender que las circunstancias de éste eran diferentes, toda vez que no existía nada en la legislación que condenara la contratación entre un municipio y una asociación de servidores públicos respecto a la suscripción de un plan de servicios médico-hospitalarios. Cabe destacar la siguiente expresión del Tribunal respecto a la aplicación de los principios de equidad, luego de concluir que los hechos del caso no demostraban que el acuerdo relativo a los servicios de salud representara un acto ultra vires:
"Aun suponiendo, no obstante, que el acuerdo logrado es anulable o aun nulo por razón de no haberse observado determinadas formalidades de ley, ofende elementales principios de equidad en el sentido civilista de la palabra, el que un municipio pudiera beneficiarse de un acuerdo en las circunstancias específicas de este caso y a la vez evadir toda responsabilidad respecto a lo convenido libremente por él", Id., a la pág. 702-703. (Enfasis nuestro.)
Para sustentar su posición nuestro Tribunal Supremo presentó situaciones análogas en las que el Tribunal Supremo de España había aplicado la doctrina de enriquecimiento injusto. Por ser relevantes a la situación de autos, y por su valor persuasivo, cabe destacar las siguientes. En la S. de 22 de enero de 1975, Núm. 8, Aranzadi, XI.II Repertorio de Jurisprudencia 20, el demandante había construido una obra para un municipio. El permiso para la obra había sido dado por el alcalde sin contar alegadamente con el ayuntamiento en pleno, el cual era el organismo administrativo competente, ni se había cumplido, argumentaba el municipio, con diversas formalidades necesarias para la validez del contrato, entre ellas, el haber prescindido de la celebración de la subasta. El Tribunal Supremo de España resolvió que, aparte de la perspectiva contractual, "no puede ignorarse la existencia en el campo del Derecho Administrativo de otras fuentes de las que surgen obligaciones..." (pág.23); que, aunque fuese nulo el contrato, el enriquecimiento injusto experimentado le imponía al municipio la obligación de resarcir al contratista "no sólo por razones de equidad, sino también de seguridad jurídica..." (pág. 24).
En la S. de 29 de octubre de 1980, núm. 3964, Aranzadi, op. cit., T. XLVII, pág. 3213, una compañía reclamó al Ayuntamiento el pago de la cantidad correspondiente a la ejecución de una obra pública realizada por dicha empresa. El tribunal de instancia declaró la nulidad absoluta del contrato "por haber prescindido del procedimiento establecido para su celebración y ser su contenido contrario a las normas de contratación de las Corporaciones Locales..." (pág. 3213). El Tribunal Supremo de España revocó al resolver que:

"la exigencia del pago de las obras no puede fundarse solamente en las obligaciones directamente derivadas del contrato, cuando es obvio que éste estaba ya ejecutado por el contratista, quien había hecho entrega de las obras y éstas recibidas provisionalmente por el Ayuntamiento..."

Añadió el tribunal en su sentencia que la solución a una controversia de este tipo había que buscarla:
"...en los principios generales en cuanto, entregada la obra e ingresada la misma en el patrimonio municipal, incluso usada ya como en este caso, la simple invalidación abocaría a consecuencias de injusticia, lesivas además para la parte a quien no le era imputable la causa de la nulidad; por eso en tales supuestos se ha venido fundando la obligación municipal de abonar el precio de la obra al contratista en el enriquecimiento injusto..." (pág. 3213).
A estos mismos efectos véase la S. de 3 de noviembre de 1980, núm. 4255 Aranzadi, op. cit., T. XLVII, pág. *721 3430; y la S. de 21 de noviembre de 1981, núm. 5267, Aranzadi, op. cit., T. XLVIII, pág. 4420.
El Tribunal Supremo de Puerto Rico en Plan Bienestar Salud v. Alcalde Cabo Rojo, supra, señaló, además, la existencia de nuevas corrientes y teorías que se han desarrollado en los Estados Unidos para mitigar los rigores de que toda actuación ultra vires impide el resarcimiento contra un municipio, entre las cuales se encuentran el contrato implícito, el impedimento en equidad y el enriquecimiento injusto. Además, que una minoría creciente de estados de los Estados Unidos está adoptando la regla de imponer responsabilidad a los municipios que se beneficien injustamente de sus propios actos ultra vires. 
IV
Examinado el marco doctrinal aplicable, procede que analicemos su alcance atendiendo los hechos particulares de este caso.
Este Tribunal entiende que lo resuelto en el caso de Plan Bienestar Salud v. Alcalde Cabo Rojo, supra, guarda una estrecha relación con el caso de autos y, en consecuencia, concluimos que la doctrina del enriquecimiento injusto es aplicable a esta situación para prevenir que el Municipio de Ponce se enriquezca injusta e inmoderadamente en perjuicio de Leafar Construction, Inc.
En el presente caso concurren circunstancias particulares que nos permiten desviarnos de la doctrina que de forma mayoritaria ha establecido nuestro Tribunal Supremo. No ha habido en este caso una tajante violación a la política pública. Recordemos que ambas partes, Leafar y el Municipio, creyeron de buena fe que las fianzas presentadas eran válidas y eficaces. El Municipio estaba en las mismas condiciones que Leafar, para detectar el motivo de nulidad. Las obras fueron ejecutadas y prácticamente terminadas en su totalidad. No cabe la menor duda de que el Municipio se benefició y continúa beneficiándose de las obras realizadas por Leafar, toda vez que el edificio ubicado en el Parque Paquita Montaner fue demolido y la Avenida Las Américas fue reforestada como parte de las obligaciones sufridas bajo los contratos otorgados entre las partes. No olvidemos que los Municipios, bajo la reglamentación establecida en la Ley de Municipios Autónomos, tienen una Junta de Subastas que se encarga de verificar que las partes con quienes contratan cumplan con los requisitos de ley, de manera que la comunidad y los dineros del municipio estén enteramente protegidos. Los contratos en cuestión, con las respectivas fianzas presentadas por Leafar, fueron aprobados por la Junta de Subastas. Por ello, Leafar procedió a ejecutar "prácticamente en su totalidad" las obras públicas pactadas.
Conviene aclarar que en este caso —a diferencia de los casos mencionados en la sección que antecede— no ha estado presente una tajante violación a la política pública que impida la aplicación de la doctrina del enriquecimiento injusto. Leafar compareció como licitador a unas subastas, las cuales le fueron adjudicadas por haber sido el postor más bajo. Leafar presentó todos los documentos requeridos tanto por la Ley de Municipios Autónomos, supra, como por el Municipio para el otorgamiento de los contratos. El Municipio aceptó estos documentos y se otorgaron los contratos de obras correspondientes. Además, se habían consignado en el presupuesto municipal las partidas para cubrir los gastos objeto de los contratos. Por otro lado, no surge de los escritos ante nos ni de los documentos que obran en nuestro expediente, que haya habido alguna otra irregularidad relativa al cumplimiento de lo establecido en la Ley de Municipios Autónomos para asegurar que los contratos entre los municipios y las entidades privadas protejan adecuadamente los intereses de la comunidad. No hemos descubierto ninguna otra anomalía, en el otorgamiento de los contratos objeto del presente pleito, que nos permita inferir que los intereses y los dineros del Municipio de Ponce quedaron desamparados, con miras a darle paso al favoritismo, al fraude, a la prevaricación, y al descuido en el manejo de los fondos públicos. Por el contrario, ambas partes contratantes observaron el procedimiento estatuido en la Ley de Municipios Autónomos, supra, y ambas actuaron de buena fe totalmente y ajenas a motivo dudoso alguno.
Leafar conocía los requisitos de ley y cumplió con ellos. La cuestión relativa a la ineficacia de las fianzas no le es imputable a Leafar, puesto que esta parte desconocía que las fianzas eran inválidas y que habían sido expedidas por una compañía de seguros que no estaba autorizada a hacer negocios en Puerto Rico. No podemos imputarle a la parte apelante, el empobrecimiento que se le pretende imponer. El Municipio de Ponce alega que también desconocía este hecho. Quien adquiere de un agente de seguros autorizado a hacer negocios en Puerto Rico puede inferir que las pólizas de él adquiridas son genuinas y que han sido expedidas con todos los *722 requisitos que exige la ley. Por tanto, la causal de nulidad de los contratos otorgados entre el municipio y Leafar no le es atribuible a ninguno de ellos. Ambos fueron víctimas inocentes de la irrupción del crimen de un tercero en su relación contractual.
Este caso, al igual que el de Plan Bienestar Salud v. Alcalde Cabo Rojo, supra, presenta una situación diferente que amerita que apliquemos la doctrina del enriquecimiento injusto. Como allí se dijo, "aun suponiendo que el acuerdo logrado sea anulable o hasta nulo por razón de no haberse observado determinadas formalidades de ley, ofende elementales principios de equidad..." el que un municipio pueda beneficiarse a costa de un contratista que ha realizado diligentemente y satisfactoriamente su trabajo, sólo por el hecho de que las fianzas que de buena fe este contratista tramitó y entregó al Municipio resultaron ser ineficaces una vez ya habían sido ejecutadas las obras. Entendemos que la situación reseñada en este caso es una muy particular que merece destacarse y distinguirse de los casos en los que se ha resuelto de forma contraria. Por ello creemos que la solución más justiciera de la controversia aquí planteada requiere que apliquemos la doctrina del enriquecimiento injusto. De igual forma, los tribunales españoles, en circunstancias muy similares a la de autos, han acudido a los principios de equidad para resolver cuestiones en las que la rígida aplicación de los principios contractuales "abocaría a consecuencias de injusticia".
Recordemos que las distintas disposiciones establecidas en las leyes que regulan la realización de obras por el Estado y los Municipios tienen por meta la protección de los intereses y dineros del pueblo; y, en específico, la fianza le asegura al Estado o al Municipio que en caso de que el contratista incumpla con lo pactado, los obreros y suplidores de la obra no puedan reclamarle. Cancel v. Municipio de San Juan, supra; Cristy v. Sánchez, supra. En el caso de autos, no podemos obviar —en aras de hacer justicia— el hecho de que el contratista cumplió cabalmente con las prestaciones pactadas, por lo que a fin de cuentas, se hizo innecesaria la confiscación de la fianza para proteger al Municipio de Ponce de reclamaciones de terceros, o que le obligaran a realizar erogaciones innecesarias. No es hasta que el Municipio se niega a pagar, luego de recibidos los beneficios, que surge la controversia relativa a la fianza. Es imprescindible enfatizar que en este caso —a diferencia del de Cancel v. Municipio de San Juan, supra; ha quedado eliminada la posibilidad de incumplimiento por parte del contratista y, por tal razón, el Municipio de Ponce queda absolutamente protegido de igual forma que si la fianza hubiese sido válida y eficaz.
V
Ha dicho nuestro más alto foro que "[cjuando de hacer justicia se trata, no puede haber moldes técnicos que aprisionen los remedios justos". Sucesión Bravo v. Secretario de Hacienda, 106 D.P.R. 672, 673 (1978); Rodríguez v. Tribunal, 74 D.P.R. 656, 667 (1953). El propósito y fin que entraña ese profundo pensamiento jurídico, el de hacer cumplida justicia, es el derrotero que siempre ha seguido este Tribunal. Villanueva v. Hernández, _ D.P.R. _ (1991), 91 J.T.S. 58.
A tenor con este precepto concluimos que a la luz de las circunstancias particulares que rodean el presente caso, procede que apliquemos la doctrina del enriquecimiento para impedir que el Municipio de Ponce se enriquezca injustamente en perjuicio de la parte demandante-apelante Leafar Construction, Inc. No le estamos atribuyendo al Municipio de Ponce ningún motivo cuestionable al asumir la posición que ha suscitado esta controversia. Estamos convencidos que ha actuado movido por un legítimo celo en la administración de fondos públicos.
Por los fundamentos anteriormente expuestos, se revoca la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, y, en su lugar, se declara con lugar la solicitud de sentencia sumaria presentada por la parte aquí apelante Leafar Construction, Inc. y sin lugar la reconvención del Municipio de Ponce. No existiendo controversia sobre las sumas adeudadas por las obras ejecutadas, se le ordena al Municipio de Ponce que le pague a Leafar Construction, Inc. la suma de $404,573.43, una vez devenga firme esta sentencia.
Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*723 ESCOLIOS 96 DTA173
1. El Tribunal de Primera Instancia en su sentencia advirtió que el Municipio de Ponce había expresado que, a los fines de la consideración de la solicitud de sentencia sumaria, tomara como ciertas todas las alegaciones de la demanda y que analizara los hechos desde la perspectiva más favorable a la parte demandante. Los hechos que en esta opinión se relatan surgen de la sentencia dictada, de la demanda presentada por Leafar contra el Municipio y de los documentos que obran en nuestro expediente, los cuales tuvo ante sí el tribunal recurrido.
2. La Cláusula Novena de ambos contratos disponía que:

"EL CONTRATISTA hará formar parte de este contrato los siguientes documentos:

a. Póliza del Fondo del Seguro del Estado.

b. Performance Bond por el 100% de la cotización.

c. Payment Bond por el 100% de la cotización.

d. Póliza de Responsabilidad Pública con cláusula de liberación para el Municipio de Ponce.

e. Copia de la Patente Municipal.

f. Certificación de Deudas con el E.L.A.

g. Pago de arbitrios municipales si son fondos federales o estatales.

h. Certificado de Incorporación y Resolución Corporativa autorizando a la persona compareciente afirmar el mismo (esto aplica solamente [sic] cuando el compareciente de la Segunda Parte es una Corporación o Sociedad).

i. Póliza sobre Pago de Salarios (Ley 111 de 22 de junio de 1961)."

3. El Municipio de Ponce alega que las fianzas expedidas por "The Continental Insurance Co. Ltd." son nulas absolutamente por haber sido expedidas por una compañía no autorizada a hacer negocios en Puerto Rico. El Código de Seguros de Puerto Rico establece que ninguna persona actuará como asegurador ni ningún asegurador contratará negocios de seguros en Puerto Rico, excepto como lo permitiera una autorización subsistente otorgádale por el Comisionado de Seguros. Artículo 3.030,26 L.P.R.A. see. 303. El Artículo 10.030 dispone que un contrato de seguro otorgado por un asegurador no autorizado, en violación de este título, será anulable, excepto a instancia del asegurador.
4. En el inciso (4) de la contestación a la demanda presentada por el Municipio se admite "que la demandante ejecutó obras en los proyectos, según los contratos, hasta su práctica terminación". En el inciso (7) admite que "al tiempo en que estaban prácticamente concluidas las obras, el Municipio descubrió que la fianza de licitación, así como las fianzas de cumplimiento y pago fueron inexistentes en todo momento, eran falsas, ya que no tan sólo la compañía que aparentemente las había expedido no estaba autorizada a hacer negocios en Puerto Rico, sino que no existía y los documentos de fianza eran absolutamente espúreos [sic]".
5. A estos efectos, véase, 10A McQuillin Mun. Corp. (3ra. ed.), Secs. 29.110-29.112, págs. 91-112; Note, Bak v. Jones County: The Status of Quasi-Contractual Recovery from a Municipal Corporation, 19 S.D. L. Rev. 485 (1974); 33 ALR3d 1164 y 33 ALR3d 1154.
6. Véase Nota 2.